No. 46,111

State of Kansas, *Appellee*, v. Arthur L. Hamrick, *Appellant*.

(479 P. 2d 854)

Opinion filed January 23, 1971.

*Raymond E. Haggart,* of Salina, argued the cause and was on the brief for the appellant.

*Bill Crews,* County Attorney, argued the cause, and *Kent Frizzell,* Attorney General, was with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: The defendant, Arthur L. Hamrick, appeals from a conviction by a jury of burglary in the second degree (K. S. A. 21-520 [now K. S. A. 1970 Supp. 21-3715]). Defendant presents two principal contentions: (1) He was required to stand trial when he was in such mental condition that he was not capable of comprehending his position or assist in his defense and (2) the trial court erred in failing to instruct the jury concerning the defense of entrapment.

On the evening of December 25, 1967, defendant had a conversation with James E. Dickerman and Gerald Coffman in a Salina tavern. As a result, a plan was formulated whereby the three would burglarize a service station. A sledge hammer and other burglary tools, were procured and placed in Dickerman's automobile. Dickerman left Coffman and defendant at the tavern and proceeded to the Salina Police Station where he advised Captain John Woody, a detective, that he thought they were going to rob a Hi-Quality Lo-Cost Service Station in Ellsworth County. The only Hi-Quality Lo-Cost Service Station that Woody knew of was located in southern Saline County.

Following his conversation with Dickerman, Captain Woody informed the sheriff and other law enforcement officers that he had been informed a robbery would take place at the service station in southern Saline County. Captain Woody, the sheriff and other officers proceeded to a bridge that overlooked the service station where they kept the station under surveillance. About 12 p. m. Dickerman stopped on the highway near the service station. Defendant and Coffman got out of the Dickerman automobile and walked toward the station. Dickerman then drove his automobile south down the highway approximately four or five miles. The sheriff observed defendant and Coffman pry open and enter the front door of the station. At that point, the officers converged on the service station, defendant fled but after a warning shot was fired he stopped and was apprehended.

Defendant was charged and, following a preliminary hearing, an information was filed in the district court on February 8, 1968. On defendant's motion, filed on March 8, 1968, the trial court appointed a sanity commission, comprised of three physicians—a psychiatrist; a general practitioner, and a surgeon. The commission examined defendant and reported on March 11, 1968, that it had investigated, inquired into and determined the mental condition of defendant.

The commission concluded: "That the defendant, Arthur L. Hamrick is *Able* to comprehend his position and to make his defense in this case."

Thereafter, on March 14, 1968, defendant's counsel filed a petition requesting a reexamination of defendant's mental condition. Counsel alleged that defendant on the preceding day, March 13, made an attempt on his own life by projecting a sharp instrument into his abdomen and that defendant had stated numerous times to counsel that he intended to take his own life. Defendant's counsel asked the court to have the previously appointed commission reexamine the present mental condition of defendant and determine whether defendant was able to comprehend his position.

On the following day, March 15, a hearing was had before the trial court on counsel's petition for a reexamination. Defendant was present with his counsel. The jailer was called as a witness and testified that on the afternoon of March 13 he found defendant "sitting on a toilet stool" in the cell "and he had a blood spot on the front of his T-shirt." The jailer called the sheriff and defendant was taken to the hospital where he was treated by Dr. Donald L. Goering, who was a member of the examining commission. Defendant was returned to jail and during the afternoon of March 14 the jailer again found defendant "sitting on the toilet stool" in his cell with a portion of the handle of a spoon sticking out of the wound, which had been inflicted the previous day. The jailer immediately called the undersheriff and defendant was taken to the hospital where he was again treated by Dr. Goering.

In the course of the hearing on defendant's motion for a reexamination, Dr. Goering was called as a witness and examined at length by the county attorney, defendant's counsel, and the trial judge. Dr. Goering testified that as a member of the court-appointed commission he participated in the examination of defendant on March 11, 1968, and at that time all of the members of the commission decided that defendant was capable of assisting and preparing his defense. Dr. Goering further testified that it was possible that defendant's situation could have changed after March 11, although he was not prepared to state that definitely.

On cross-examination by the county attorney Dr. Goering testified as follows:

"Q. Has anything happened since your examination of March 11 that

would change your mind as to the finding of the commission that this man is able to comprehend his position and aid his counsel?

"A. Nothing as far as I am aware of. I'm not prepared, however, to make a definite statement on this since we have not really examined him in this light."

Following the examination of Dr. Goering by counsel he was examined at length by the court. In response to a question by the court Dr. Goering testified as follows:

"We are aware of the fact that Mr. Hamrick has some tendancies toward physical violence toward himself and possibly toward others. As a commission we were aware of this. However, I have not witnessed any confusion in Mr. Hamrick's thinking, although I have been told that he has been so tense that he is unable to assist his attorney during the past three days. I really can't answer that because I haven't examined him for this particular problem since March 11. I do not personally feel that the fact that he has attempted violence to himself means that he is now not capable of standing trial. This incident in itself does not mean this to me. I know that he is more tense because of other things that have happened since the commission met and undoubtedly more depressed."

On further recross-examination by the county attorney Dr. Goering testified as follows:

"Q. Another question, Doctor: Is Mr. Hamrick well-orientated to time and space?

"A. To my knowledge, he is and was on the 11th."

At the conclusion of the hearing on the motion for reexamination, the court noted, that in addition to the testimony of Dr. Goering and other witnesses, it had observed the conduct of defendant and his conversation with counsel and his demeanor in the courtroom during the course of the hearing. The court announced that it would consider all of the evidence, together with its observation of defendant, and announce its decision the following Monday, March 18, when the case was set for trial; at which time the court announced its decision as follows:

"As the Court has indicated to counsel last Friday at the hearing on that date, you should continue to prepare for trial; however, the Court did not formally announce its findings at that time. The Court at that time did roughly review the evidence before the Court and/or the opportunity for observations that the Court had had.

"The Court finds that the defendant is not an insane person or an idiot nor an imbecile; that he is able to comprehend his position and make his defense."

Defendant contends the trial court erroneously overruled the petition for reexamination and proceeded with the trial of defend-

ant. He also argues the findings of the sanity commission were incomplete and should not have been accepted by the trial court.

The duty of the trial court under K. S. A. 1969 Supp. 62-1531 [now K. S. A. 1970 Supp. 22-3301 to 3304], to ascertain the mental competency of an accused to stand trial has been the subject of consideration by this court on many occasions. A thorough discussion of the subject, and leading cases dealing therewith, is found in our opinion in *Van Dusen v. State*, 197 Kan. 718, 421 P. 2d 197. The test of insanity of an accused, which would preclude his being put on trial for a criminal offense, was put in these words in paragraph four of the syllabus:

"The test of insanity of an accused precluding his being put on trial for a criminal offense is his capacity to comprehend his position, understand the nature and object of the proceedings against him and conduct his defense in a rational manner. If the defendant in a criminal action is capable of understanding the nature and object of the proceedings pending against him, if he rightly comprehends his own condition with reference to such proceedings, and can conduct his defense in a rational manner, he is, for the purpose of being tried, to be deemed sane, although on some other subject his mind may be deranged or unsound."

See, also, *State v. Severns*, 184 Kan. 213, 336 P. 2d 447, and *State v. Collins*, 162 Kan. 34, 174 P. 2d 126.

Manifestly, it is the policy of the law not to try persons while they are insane. (*State v. Collins*, supra, and *State v. Badders*, 141 Kan. 683, 42 P. 2d 943.) The rule is justly designed for the protection of persons to be tried for crimes when they are incapacitated to properly defend themselves. On the other hand, the rule was not intended to furnish a technical means of invalidating just verdicts reached by judicial process. In order to reverse the trial court on the instant contention we would be obliged to hold, as a matter of law, the record compelled the trial court to entertain a real doubt with respect to defendant's capacity to make a proper defense. The question of such doubt is addressed to the sound discretion of the trial court.

It is true, as defendant points out, the finding of the commission was brief. However, the determination that defendant "is able to comprehend his position and to make his defense in this case" constitutes a complete answer to the question before the commission. Moreover, there was much more information before the trial court before it made the final determination that defendant was competent to stand trial.

The ruling shows on its face the trial court carefully exercised its discretion in resolving the matter by considering not only the report of the commission in the first instance, but also the testimony of the jailer and Dr. Goering at the hearing on the petition for reexamination, as well as the court's own observation of the conduct and demeanor of defendant who was present. The trial court was fully aware of defendant's conduct concerning the self-inflicted wound. The court also had the advantage of Dr. Goering's testimony in this connection:

". . . I do not personally feel that the fact that he has attempted violence to himself means that he is not capable of standing trial."

The provisions of K. S. A. 1969 Supp. 62-1531 authorize the determination of the accused's capacity to stand trial by three alternative methods: (1) A finding by the trial court in which such indictment or information is filed; (2) a finding by a commission; or (3) a finding by another jury empaneled for the purpose of trying such question.

In the instant case, in addition to the determination by the commission, the trial court made specific findings of its own. (See *State v. Anderson,* 202 Kan. 52, 446 P. 2d 844.)

In the light of the evidence before it, we cannot say, as a matter of law, the trial court erred in failing to direct a reexamination of defendant or in ordering him to stand trial.

In support of his second contention, defendant argues that entrapment was one of the defenses relied upon and the trial court erred in refusing to submit an instruction covering the law in connection therewith.

Defendant cites a number of holdings of this court to the effect that in a criminal action a defendant is entitled to an instruction, setting out his theory of defense, where there is any evidence whatsoever to support it; the weight of such evidence being for the jury. The rule suggested by defendant has been consistently adhered to by this court. It was restated in the recent case of *State v. Runnels,* 203 Kan. 513, 456 P. 2d 16, where it was held:

"It is the duty of the trial court to instruct the jury on the law applicable to the theory of both the prosecution and the accused so far as they are supported by any competent evidence and are germane to the issues raised on the charge in the information." (Syl. ¶ 1.)

See, also, *State v. Ringler,* 194 Kan. 133, 397 P. 2d 390; *State v. Barnes,* 164 Kan. 424, 190 P. 2d 193; and *State v. Severns,* 158 Kan. 453, 148 P. 2d 488.

This court has also recognized entrapment as a defense in a criminal action. (*State v. Wheat*, 205 Kan. 439, 469 P. 2d 338; *State, ex rel., v. Leopold*, 172 Kan. 371, 240 P. 2d 138; and *State v. Stickney*, 53 Kan. 308, 36 Pac. 714.) The trouble with defendant's position is that in this case there is no evidence of entrapment, as that term is defined in an instruction approved by this court in *State v. Wheat*, supra. The instruction referred to was said to correctly state the general rule relating to entrapment. It reads:

" 'In considering the defense of entrapment, the court advises you that the law does not tolerate a person, particularly a law enforcement officer, generating in the mind of a person who is innocent of any criminal purpose, the original intent to commit a crime thus entrapping such person into the commission of a crime which he would not have committed or even contemplated but for such inducement, and where a crime is committed as a consequence of such entrapment, no conviction may be had with a person so entrapped as his acts do not constitute a crime.

" 'When law enforcement officers are informed that a person intends to commit a crime, the law in the interest of law enforcement and the suppression of crime permits the officers to afford opportunity for the commission of the offense and to lend the apparent cooperation of themselves or of a third person for the purpose of detecting the offender. When such a practice is followed by peace officers, if the suspect himself originally and independently of the officers intends to commit the acts constituting a crime, and if in the pursuit of such intent he personally does every act necessary to constitute a crime on his part, his guilt of the crime thus committed by him is not affected by and he has no defense in the fact that when the acts are done by him an officer is present and provides the opportunity for the commission of the offense.

" 'In other words, a defendant can rely on the defense of entrapment when he is induced to commit a crime which he had no previous intention of committing, but cannot rely on the defense when he has a previous intention of committing a crime and is merely afforded the opportunity to complete the crime by the peace officer.' " (pp. 440, 441.)

In the instant case, defendant does not even suggest that he was entrapped by any law enforcement officer. The only evidence offered by defendant was the testimony of accomplice Coffman who claimed that Dickerman, with a gun in his hand, forced Coffman and defendant to commit the burglary. Dickerman's testimony, relating to the events leading up to the burglary, was in direct conflict with Coffman's description of the affair. The trial court fully instructed on the issue of intent and specifically informed the jury if it found from the evidence that the defendant entered the premises out of fear of bodily harm and without felonious intent he must be acquitted.

The record discloses that Captain Woody testified at length and

in detail concerning the circumstances under which he became aware that a crime was going to be committed and what action he took to apprehend the burglar. We are unable to find any suggestion in Captain Woody's testimony that he or any other law enforcement officer in any way induced defendant to commit the burglary. Since there was no evidence of entrapment, the trial court properly refused to submit defendant's requested instruction. (*State v. McDermott,* 202 Kan. 399; 449 P. 2d 545, cert. den. 396 U. S. 912, 24 L. Ed. 2d 187, 90 S. Ct. 226; *State v. Ringler,* supra; and *State v. Clark,* 117 Kan. 133, 230 Pac. 318.) The identical question was presented in *State v. Clark,* supra, where it was held:

"When the evidence viewed most favorably for defendant does not disclose a case of entrapment by an officer or detective, the court is justified in refusing a requested instruction on entrapment." (Syl. ¶ 2.)

Defendant has included in his brief a section which he denominates "petition to vacate judgment and discharge the defendant." Defendant contends that there has been an inordinate delay in perfecting this appeal, which constitutes a violation of his right to due process of law under the Kansas and Federal Constitutions. This complaint, of course, has not been presented to the trial court for a determination of the facts involved. It is a matter to be presented under the provisions of K. S. A. 60-1507 at the proper time. Rule No. 121 (*c*) (2) (205 Kan. xliv, xlv) provides:

". . . a motion to vacate, set aside or correct a sentence cannot be maintained while an appeal from the conviction and sentence is pending or during the time within which an appeal may be perfected, . . ."

Nevertheless, we have examined the allegations and arguments set out in defendant's brief in this connection, as well as the complete record in this court. It appears the delay was caused primarily by two changes of counsel subsequent to defendant's trial.

A motion for a new trial was argued by defendant's trial counsel on April 12, 1968. The motion was overruled and sentence pronounced on that date. Apparently, defendant's trial counsel was called to active military duty and on April 16, 1968, another attorney, Frank C. Norton, who was specifically requested by defendant was appointed. The defendant submits correspondence with Mr. Norton, indicating that he was working on the appeal and experiencing difficulty in finding support for defendant's contentions in the transcript. For some unexplained reason, notice of appeal was not filed—a matter which came to light by reason of

a letter by defendant addressed to the clerk of this court and received on December 30, 1969. On March 27, 1970, Mr. Norton made application to withdraw as counsel for defendant and present counsel was appointed. Thereafter, the appeal was expeditiously processed by defendant's counsel and heard by this court on December 10, 1970.

On the showing made it cannot be said the delay in the appeal process was constitutionally excessive. It is evident the bulk of the delay was attributable to causes beyond the state's control. (See *Prescher v. Crouse*, 431 F. 2d 209, [10th Cir., 1970]).

Lastly, defendant makes a broad assertion that the trial court erred in approving the jury's verdict and overruling defendant's motion for a new trial. No argument is made in support of this assertion. There is ample evidence to support the verdict and we find no trial error shown in the record which would warrant a new trial.

The judgment is affirmed.