No. 46,819

THE STATE OF KANSAS, *Appellee,* v. FRANK FITZGIBBON, *Appellant.*

(507 P. 2d 313)

Opinion filed March 3, 1973.

*David J. Phillips,* deputy district defender, of Topeka, argued the cause and was on the brief for the appellant.

*Donald P. Morrison,* assistant district attorney, argued the cause, and *Vern Miller,* attorney general, and *Gene M. Olander,* county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: This is a direct appeal from a jury conviction of the defendant and his sentence to the custody of the director of penal

institutions: (1) for a period of not less than one year nor more than ten years for the offense of selling marijuana under K. S. A. 65-2502; (2) for a period of not less than one year nor more than five years for the offense of conspiracy to sell heroin under K. S. A. 1970 Supp. 21-3302 and K. S. A. 65-2502; and (3) for a period of not less than five years nor more than twenty years for the offense of selling LSD under K. S. A. 65-2602 (1)(a).

The issues for review on appeal involve the failure of the trial court to instruct on the defense of entrapment and the defense of procuring agent.

The defense of entrapment can best be defined by reference to its codification in K. S. A. 1972 Supp. 21-3210:

"A person is not guilty of a crime if his criminal conduct was induced or solicited by a public officer or his agent for the purposes of obtaining evidence to prosecute such person, unless:

"(a) The public officer or his agent merely afforded an opportunity or facility for committing the crime in furtherance of a criminal purpose originated by such person or a co-conspirator; or

"(b) The crime was of a type which is likely to occur and recur in the course of such person's business, and the public officer or his agent in doing the inducing or soliciting did not mislead such person into believing his conduct to be lawful."

Procuring agent as a defense to a charge of selling narcotics is self-defining. Its use as a defense is explained in *State v. Osburn,* 211 Kan. 248, 505 P. 2d 742, as follows:

"In a prosecution for the unlawful sale of a narcotic when the defense of 'procuring agent' is properly raised the decision as to whether the accused merely acted as a procuring agent of the buyer or was a seller of the narcotic to the buyer is a question of fact for the jury to determine from the evidence." (Syl. ¶ 2.)

Each of these defenses has recently received exhaustive consideration by this court; the defense of entrapment in *State v. Reichenberger,* 209 Kan. 210, 495 P. 2d 919, and the defense of procuring agent in *State v. Osburn,* supra. We stated in *State v. Reichenberger,* supra:

"Where some evidence is offered by a defendant in support of the defense of entrapment and a conflict is presented where the intent to engage in an enterprise involving narcotics originated in the mind of defendant or was instigated by officers or agents of the state, the issue becomes a question for the trier of facts, . . ." (Syl. ¶ 1.)

We pointed out in *Reichenberger* that the issue of entrapment was dependent on whether the defendant had a predisposition to

commit the crime and that ready compliance by the defendant is generally, if not universally, accepted as evidence of predisposition. It is not our intention to repeat or expand on what was said in *Reichenberger.* It is our obligation to apply the rules of law there developed to the facts in this case.

A similar situation arises in connection with the defense of procuring agent. We will not repeat or expand the rules of law developed in *Osburn.* Again, it is our obligation to apply the rules of law there developed to the facts in this case. In *Osburn,* we stated that when the defense of procuring agent has properly been raised by the evidence and the request for an instruction has been made, the jury should be instructed that if they find the defendant was merely acting as a procuring agent for the purchaser and not for or as the seller of the drugs, the defendant is not guilty of sale.

On appellate review of the trial court's failure to instruct on certain defenses in a criminal action it is the role of this court to determine whether the record discloses any evidence considered in the light most favorable to the defendant, which would have justified the giving of the questioned instructions. (*State v. Hamrick,* 206 Kan. 543, 479 P. 2d 854.) The record discloses the testimony of the defendant in narrative form as follows:

". . . [O]n the night of December 21, 1970, he received a phone call from Kim Becker informing him that Mr. Biddle and someone else were coming over and that they were looking for drugs. Fitzgibbon further stated that approximately ten to fifteen minutes later, Mr. Biddle and Mr. Frison were at the door. Upon opening the door, Mr. Biddle asked Fitzgibbon if he had anything for sale. Fitzgibbon's response was, 'No, I didn't . . . that I had quit dealing. That the house had been raided and it was too hot and that I didn't want to keep any drugs at all in the house.' Fitzgibbon stated that Biddle then asked if Fitzgibbon knew any particular place at all where they could get something. According to Fitzgibbon, the conversation eventually got around to LSD and Biddle and Frison wanted to know if he could get some for them. Fitzgibbon stated that he told them that he did not know . . . that he would check. Fitzgibbon stated further that he then tried to use the phone but it did not work. Fitzgibbon stated that he and Biddle and Frison then left his house and proceeded to another place to get what Fitzgibbon thought was psilocybin. Before going into the house, Fitzgibbon was given ten dollars and told to buy the acid. Fitzgibbon further stated that upon returning to the car, he gave three tablets and the change to either Frison or Biddle.

"Fitzgibbon further testified that on the 24th of December, a Mr. Jones and Dan Biddle came to his house. Fitzgibbon recalled someone saying something about heroin and that he told them he did not have any there at the house . . . that he would call somebody and that maybe they could help them.

Biddle and Jones' response was 'that would be fine, why don't you make the call.'

"Fitzgibbon further testified that on the night of December 28, 1970, Biddle and Frison had come over to his house and during their conversation, they remarked that the psilocybin that Fitzgibbon had bought for them last week was great. Then they . . . Frison and Biddle . . . asked Fitzgibbon if he had any marijuana for sale. Fitzgibbon replied that he did not have any and again that he had quit dealing and he did not want any drugs in the house at all. Fitzgibbon further testified that shortly thereafter, they went over to another house to buy some marijuana. Fitzgibbon said he was given $15.00 by Frison and Biddle and he and his girlfriend went up to the house and bought the marijuana. Upon their return to the car, they gave the marijuana to Biddle and Frison. At this point, they all returned to Fitzgibbon's house where they all smoked some of the marijuana.

"Frank Fitzgibbon further testified that on the 21st, 24th and 28th of December, 1970, it was not his intent to sell or help somebody else sell drugs to anyone. According to Fitzgibbon, he thought of it as helping someone out. 'I mean, like people have helped me like that before, and some people need drugs, you know.'"

An examination of the testimony of the undercover agents of the Topeka Police Department does not materially differ from the testimony of the defendant. The record discloses the defendant in this case testified in *Osburn* and the substance of his testimony was that he was at one time associated with Osburn in the sale of marijuana and speed during a period of April and May, 1970. He admitted he and Osburn were selling large quantities of drugs for a living at that time, but he had stopped dealing and he assumed Osburn had stopped dealing. The record here does not disclose whether the officers who approached the defendant to obtain drugs had any knowledge of the defendant's prior traffic in drugs. In *Reichenberger* there was no evidence that the defendant had engaged in any prior drug traffic.

We have weighed the significance of this testimony and conclude that it does not justify a holding that entrapment in this case is not a defense as a matter of law. We also point out this would be true even though the officers had knowledge of the defendant's previous activities. Even though prior illicit traffic in drugs would create a strong factual basis for denying the defense by a jury, we adhere to the ruling in *Reichenberger* that the issue is one of fact and it should have been submitted to the jury.

Turning to the evidence as related to the defense of procuring agent, we reach a similar result. With relation to the offense of selling LSD we find the solicitation resulted in the defendant's re-

sponse that he didn't have any LSD and that he had quit dealing. The defendant then accompanied the officers to another place and with money furnished by the officers purchased three tablets and returned the change to one of the officers. In regard to the incident involving heroin, the defendant told the officers he did not have any at the house, but that maybe he could help them.

The marijuana incident resulted in the same reply—that he did not have any and that he had quit dealing, and that he did not want any drugs in the house at all. On this occasion the defendant, accompanied with funds supplied by the officers, purchased the marijuana and gave it to the officers.

We believe a reasonable interpretation of this testimony in the light most favorable to the defendant raises a factual issue and that issue should have been presented to the jury under the rules of law developed in *Osburn.*

Normally, this would dispose of this case. However, ingenuity of counsel presents another question for our consideration which has not been before this court. The state contends the defense of entrapment cannot be asserted unless the defendant admits to the crime charged. The defense is an affirmative defense in the nature of confession and avoidance; that is, the defendant must admit the acts constituting commission of the crime charged, but, in avoidance, seek relief from guilt on the ground the criminal intent was not his, but that of officers who implanted the idea in his otherwise innocent mind by suggestion or solicitation. The state's position is supported by 21 Am. Jur. 2d, Criminal Law, § 144, p. 214; 33 A. L. R. 2d 910; and 1 Wharton's Criminal Evidence, 13th Ed., § 33, p. 56. The rule also is in accord with that of the 10th Circuit as disclosed in *United States v. Gibson,* 446 F. 2d 719, (10th Cir. 1971).

An examination of these authorities reveals they are generally based on a situation where the defendant denies any involvement in the crime. In the instant case the defendant admits his involvement in the crime, but says since he was a procuring agent he is not guilty of the crime. We have no quarrel with the rule asserted by the state, but doubt its application when the defenses are not inconsistent.

Several cases have recognized there are circumstances where two defenses are not so repugnant that the proof of one disproves the other. In *Henderson v. United States,* 261 F. 2d 909, (5th Cir. 1958), a deputy sheriff engaged in detection of liquor law violations

persuaded the defendant to go into the business of operating a still. A government witness connected the defendant with the operation of the still, connected a third party with the financing, and the sheriff with providing the protection. Henderson admitted his participation in the operation of the still, but denied connection with the third party or that he was in any way a party to the conspiracy. It was held that the defendant could admit operation of the still, deny his complicity in the conspiracy, and still defend on the ground that the overt act he committed was done as a result of entrapment; that is, he could say he did not go so far as to become a party to the conspiracy, but to the extent that he did travel down the road to crime he was entrapped.

In a well-reasoned case from our sister state of Missouri, (*State v. Taylor*, 375 S. W. 2d 58 [Mo. 1964]), the defendant asserted the defense of entrapment in a charge of selling a narcotic drug and the defense that the traffic between defendant and the government agent did not constitute a sale. The court disposed of the general rule that defense of entrapment is not available to a defendant who denies he committed the offense charged in the following language:

". . . In the instant case Taylor, admitting his participation in the acts leading up to the transfer of the narcotics, sought exoneration on two theories; first, that the facts admitted did not constitute a 'sale' as between defendant and the government agent and that defendant's connection with Darlene Moore did not make him jointly guilty with her; second, that he was entrapped. In other words, admitting that he was there; that he searched for and found a source of marijuana and a willing seller, arranged for a sale and was present when the narcotics were transferred, defendant argues that in legal contemplation his acts did not, technically, constitute a 'sale' or joint action with the seller, but that if he is wrong as to the legal effect of what he did, he nevertheless should be exonerated on the ground of entrapment. Under these circumstances both defenses are available." (p. 62.)

In *United States v. Rodrigues*, 433 F. 2d 760, (1st Cir. 1970), the defendant was charged with selling heroin. Both the defenses of entrapment and of procuring agent were raised. The facts disclosed in the opinion are strikingly similar to those in this case. The opinion points out the defendant admitted facts which would be sufficient to sustain a conviction for selling narcotics unless the jury were to conclude he was merely a procuring agent. The court stated:

". . . There is no contradiction in maintaining that one was merely a procuring agent and was entrapped into even that service." (p. 761.)

The Supreme Court of California takes a more liberal view of the issue. In *People v. Perez,* 62 C. 2d 769, 44 Cal. Rptr. 326, 401 P. 2d 934, the defendant was charged with possession of marijuana and it was held the defendant was entitled to the defense of entrapment without conceding the evidence shows his guilt beyond a reasonable doubt. The court said:

".  .  . We disagree with the Attorney General's contention that to invoke the defense of entrapment a defendant must admit committing the criminal acts charged. Although the defense is available to a defendant who is otherwise guilty (*People v. Benford,* 53 Cal. 2d 1, 9 [345 P. 2d 928]), it does not follow that the defendant must admit guilt to establish the defense. A defendant, for example, may deny that he committed every element of the crime charged, yet properly allege that such acts as he did commit were induced by law enforcement officers. (Citing cases.) Moreover, a defendant may properly contend that the evidence shows unlawful police conduct amounting to entrapment without conceding that it also shows his guilt beyond a reasonable doubt. .  .  . To compel a defendant to admit guilt as a condition to invoking the defense of entrapment would compel him to relieve the prosecution of its burden of proving his guilt beyond a reasonable doubt at the risk of not being able to meet his burden of proving entrapment. To put the defendant in that dilemma would frustrate the assertion of the defense itself and would thus undermine its policy. .  .  ." (pp. 775, 776.)

We hold that the defenses of entrapment and procuring agent against a charge of selling narcotics are not inconsistent under the facts of this case and the trial court should have instructed the jury on each defense. The language of *Henderson, Taylor, Rodrigues,* and *Perez* is approved only to the extent that it supports our conclusion in this action.

Reversed and remanded for a new trial.