No. 46,907

STATE OF KANSAS, *Appellee*, v. JAMES V. FARMER, *Appellant*.

(510 P. 2d 180)

Opinion filed May 12, 1973.

*Tom Clarkson*, Goering, Silver and Clarkson, of Wichita, argued the cause and was on the brief for the appellant.

*Wallace W. Underhill*, Assistant District Attorney, argued the cause, and *Vern Miller*, Attorney General, *Keith Sanborn*, District Attorney, and *Roger C. Skinner*, Assistant District Attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

KAUL, J.: The defendant (James V. Farmer) appeals from a felony conviction by a jury for the delivery of Tedral Expectorant, a nonnarcotic drug, in violation of K. S. A. 1971 Supp. 65-2601, 2602 and 2607 [repealed, Laws of 1972, Chapter 234, Section 41, effective July 1, 1972]. Tedral Expectorant, the drug in question, was alleged to be a salt, compound or derivative of a barbituric acid,

within the definition of the term "drug" as set out in 65-2601 (1) (*a*). The activities of defendant and his nephew by marriage, Billy R. Wilson, on November 24, 1971, culminated in the arrest of defendant on the charge set forth.

Wilson picked up defendant in the morning and the two of them proceeded—according to their testimony—to bum around town looking for yard work, cutting and trimming trees and odd jobs. Later in the afternoon defendant became tired and proceeded to his doctor's office to have a prescription filled for an illness which was not identified in the testimony. Upon obtaining the prescription, the defendant and Wilson proceeded to complete a trash hauling job. Thereafter, the two went to a tavern where they played pool and started drinking. Defendant testified that as he began to get drunk Wilson suggested that he sell some of his pills to replenish his funds, which were becoming exhausted.

Wilson's version of the events of the day does not differ from defendant's prior to the conversation concerning the selling of defendant's pills. He also testified that defendant was about out of money and that was the reason he suggested defendant sell some of his pills. Wilson repeated the proposal three or four times. The pair then proceeded to another tavern where they continued their drinking, and Wilson persisted in telling defendant there would be no risk in selling his pills. Wilson further informed defendant that he had done business with a friend whom he had just talked with and there would be no risk in making a sale. In the meantime, Wilson called Detective Stewart of the Wichita Police Department, informing him that defendant had some pills for sale. Wilson further testified that he had never known of defendant selling pills before, or even offering to sell them; that selling the pills was his (Wilson's) idea; and that he talked defendant into it. He said that he set defendant up so that he could be paroled on condition that he go to an alcoholic center in Walla Walla, Washington, for treatment for his alcoholism.

Detective Stewart testified that upon receiving a call from Wilson he proceeded to the Dog House Tavern, and after entering and being seated he was approached by defendant, who sat down beside him and offered to sell him some pills. After haggling over the price and finally agreeing upon a compromise, the defendant proceeded to take the pills from his pocket and count them out. Stewart further testified that he finally made an offer of $100 for the

lot, to which defendant agreed. At this point, Stewart produced his badge and placed defendant under arrest.

On appeal, defendant presents numerous specifications of error. However, his only point of consequence concerns the trial court's refusal to submit a requested instruction on the defense of entrapment. Defendant says the testimony of Wilson was sufficient to frame an issue of entrapment which should have been submitted to the jury.

In response the state argues that Wilson was not an agent for the state and, thus, his conduct could not serve as a basis for entrapment; and further that the defense of entrapment was completely inconsistent with defendant's testimony at the trial.

In connection with the state's position it should be noted we recognize the rule that ordinarily the doctrine of entrapment does not extend to acts of inducement on the part of a private citizen who is not acting for an officer of the law. (22 C. J. S., Criminal Law, § 45 [2], pp. 138, *146*.)

It is, of course, the duty of the trial court to instruct the jury on the law applicable to the theories of both the prosecution and the accused so far as they are supported by any competent evidence. (*State v. Hamrick,* 206 Kan. 543, 479 P. 2d 854; *State v. Runnels,* 203 Kan. 513, 456 P. 2d 16; and *State v. Ringler,* 194 Kan. 133, 397 P. 2d 390.)

In applying the foregoing rule it is the function of this court on appellate review to determine whether the record discloses any evidence which, considered in the light most favorable to the defendant, would have justified the giving of the requested instructions. The weight of defendant's evidence is a matter for the jury. (*State v. Fitzgibbon,* 211 Kan. 533, 507 P. 2d 313; *State v. Hamrick,* supra; and *State v. Ringler,* supra.)

If the defendant offers some evidence in support of the defense of entrapment it becomes an issue to be determined by the trier of facts. In the recent case of *State v. Fitzgibbon,* supra, we adhered to our previous holding on this point in *State v. Reichenberger,* 209 Kan. 210, 495 P. 2d 919, wherein we held:

"Where some evidence is offered by a defendant in support of the defense of entrapment and a conflict is presented where the intent to engage in an enterprise involving narcotics originated in the mind of defendant or was instigated by officers or agents of the state, the issue becomes a question for the trier of facts." (Syl. ¶ 1.)

With the foregoing rules in mind, we turn first to the question whether Wilson was acting as an agent for the state or, more

specifically, as an agent in collaboration with Detective Stewart. The state takes the position that there was no evidence of agency between Wilson and the state and, thus, there was no material question of fact on this point for the jury to decide (citing *State v. Doyle,* 201 Kan. 469, 441 P. 2d 846). We cannot agree. The evidence is undisputed that Wilson had previously worked as an agent under Detective Stewart's discretion. Concerning this occasion, Wilson did testify that, for reasons of his own, he "set up" the defendant, but he also indicated that he had some sort of a standing arrangement with Stewart for working on his own. In this connection Wilson's testimony, on cross-examination, appears as follows:

"Q. At that time had Officer Stewart told you to see if you could make Farmer sell his pills?

"A. No. He always allowed me to work on my own.

"Q. He didn't tell you at all to sell his pills?

"A. Do what?

"Q. He didn't tell you at all to have Farmer sell his pills?

"A. It was just standing."

Wilson further testified:

". . . Kenny [Stewart] was helping me keep my son away from the Welfare Department and as long as I helped him he would continue to do so. . . ."

Detective Stewart's testimony on the point is inconsistent. In a narrative statement of his testimony on direct examination this statement appears:

". . . Mr. Wilson had worked as an informant for me in the past just as he did on this day. . . ."

On cross-examination, concerning his relationship with Wilson, Stewart's testimony appears as follows:

"Q. Was Mr. Wilson working for you on the date and time in question?

"A. Well it's according to how you define the term working for me in context.

"Q. Well Officer, let me help you in this—this matter then. Had he worked as an informant in drug cases for you in the past?

"A. Yes, sir.

"Q. And did he work as such on this case that we're concerned with today?

"A. He told me about it, yes, sir."

On recall as a rebuttal witness for the state, Stewart denied that Wilson, at the time, was acting as an informant or operator at his direction and that he had terminated his previous arrangement with Wilson. However, Stewart further testified:

"Q. And when did you—did you ever terminate this relationship?

"A. Yes, sir.

"Q. When and Why?

"A. He—I arrested him for grand larceny that he had alleged to have committed and after he was arrested and charged on the grand larceny I told him that due to the circumstances that I didn't feel that he could be of any consequential use to me. Told him to—that I couldn't use him any more. I told him that I was flexible enough that I could—if he wanted to call me on occasion if he had any information that I'd act on it and go from there."

Wilson testified that when Stewart arrived with two other officers at the tavern, Stewart asked Wilson to send defendant over to the table where the officers were seated.

We must conclude there is evidence showing that Detective Stewart maintained a working arrangement with Wilson and that Wilson continued to assist Stewart in setting up drug arrests in return for Stewart's continued aid with the problem concerning Wilson's son. Viewed in the light most favorable to the defendant, as we are required to do when considering a refusal to submit requested instructions, we must conclude that the evidence was sufficient to go to the jury on the issue of Wilson's agency with an appropriate instruction in connection with the defense of entrapment.

We turn next to the state's argument that the defense of entrapment is not available to defendant because of his denial of the commission of the offense charged. We agree with the state's assertion that generally a defendant must admit that he did the acts with which he is charged in order to avail himself of the defense of entrapment. (21 Am. Jur. 2d, Criminal Law, § 144, pp. 212, 214; 61 A. L. R. 2d, Anno. p. 677.) We recognized the rule in the recent case of *State v. Fitzgibbon*, supra, wherein we held:

"Defense of entrapment is not generally available to defendant who denies that he committed the offense charged." (Syl. ¶ 4.)

The reason for the rule is simply that a defendant must necessarily admit that he did the acts with which he was charged if he is going to contend that he was entrapped into the commission thereof. The problem in applying the rule in the instant case arises from the fact that defendant's testimony is so vague and uncertain that it is difficult to ascertain precisely what he admitted and what he denied.

The evidence is undisputed that defendant was drunk at the time of his arrest. Detective Stewart testified "Mr. Farmer had been drinking on the night in question and was drunk." Wilson said that at the time defendant was pretty drunk. Defendant, likewise, testified that he had some whiskey and beer and "I began to get drunk." His condition at the time of his arrest probably accounts for his

hazy recollection and jumbled testimony given at the trial. Defendant testified that Wilson repeatedly urged him to sell his pills and that Stewart tried to buy them. He testified:

". . . I know they tried to buy them. I remember that much of it and I remember telling them that I wouldn't sell my pills even though I was drunk . . . I don't think I ever agreed to sell my pills to nobody. No I think that's all a lie. . . ."

On the other hand, defendant admitted that he had the pills; that he did take them out of his pocket and show them to Stewart because as he testified, Stewart insisted on seeing them. In fact, defendant actually admitted all of the elements of the offense except an agreement to sell concerning which his testimony was uncertain. Certainly, defendant's testimony cannot be interpreted so as to constitute a denial of any involvement in the offense charged.

Under the peculiar circumstances shown to exist in this case, we believe the evidence, tested under the applicable rules heretofore recited, justified submission of entrapment to the jury.

The judgment is reversed with directions to grant a new trial.