No. 48,117

STATE OF KANSAS, *Appellee*, v. T. MAURICE JORDAN, *Appellant.*

(551 P. 2d 773)

Opinion filed June 12, 1976.

*John J. Ziegelmeyer,* of Kansas City, argued the cause and was on the brief for the appellant.

*Reid F. Holbrook,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, *Nick A. Tomasic,* district attorney, and *Elizabeth B. Dunn,* of Kansas City, were with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Defendant-appellant Theodore Maurice Jordan, a former probation officer, brings this appeal from a jury conviction for requesting and receiving a bribe (K. S. A. 21-3901 [*b*]).

The charge against Jordan arose from his conduct as a probation officer while employed by Wyandotte County. Witnesses for the state testified at the trial that in October and November, 1973, Jordan sought and received the sum of $400.00 from Veralee Massey to assure her probation following a marijuana conviction. Massey testified that she applied for probation at the Wyandotte County probation office. After an interview with probation officers she was approached by appellant who questioned the truth of certain statements contained in her application. Jordan informed her that her chances for probation were slim but that he might be able to help. He asked her to telephone him at his home the following day. Massey made the phone call and was instructed to meet with Jordan to discuss terms for probation. Massey and Jordan met and at the meeting Jordan stated that he could insure her probation if she would pay him $500.00. It was agreed she should pay $300.00 to appellant through a friend Phillip White.

Phillip White testified that soon after Massey told him about Jordan's request for money, he (White) reported the extortion scheme to Jack Ballas, a federal treasury department agent. White had worked for Ballas as a paid informer on previous occasions. Ballas advised White to meet with Jordan and discuss plans for payment of the bribe money. On October 31, White and Jordan met and $300.00 was agreed as the sum required to secure Massey's probation. They were to arrange a date for payment later. Subsequently White and Ballas advised state and local law enforcement officials about Jordan's activities. The law officers advised White to carry out his role as an intermediary and pay the bribe

requested by Jordan. It was understood the meeting would be monitored by police who would arrest Jordan upon culmination of the illegal acts.

Pursuant to this plan, telephone conversations were recorded between White and Jordan on the 16th and 20th of November. In the conversation of November 16th, White told Jordan that he would soon have the money. Jordan insisted that the payment must be made before November 30. On November 20, White agreed by telephone to meet Jordan and pay an installment of $150.00. The following day White kept his rendezvous with Jordan at a local parking lot and $150.00 was handed to Jordan. This meeting was observed and photographed by police. It was also monitored by means of radio equipment concealed in White's clothing. On November 30, White made a second payment of $250.00 to Jordan. Again police observed and recorded the transaction.

Subsequently Jordan was arrested and charged with requesting and receiving a bribe. At his first trial the jurors were unable to reach a verdict. A second trial was commenced 45 days later. At this second trial the jury returned a verdict of guilty. Jordan was sentenced to a prison term of one to ten years.

On appeal Jordan contends that he was denied constitutional equal protection of the laws when the trial court refused to grant his request for a free copy of the transcript of the first trial. The trial court denied appellant's motion for transcript. It should be noted that both trials were held before the same judge with the same counsel and the same court reporter. The court reporter was available during the entire second trial and could have made portions of the first trial transcript available to defense counsel if such had been requested.

The question of whether it was necessary to furnish appellant a free transcript of his first trial to protect his constitutional right of equal protection is controlled by the decision in *Britt v. North Carolina*, 404 U. S. 226, 30 L. Ed. 2d 400, 92 S. Ct. 431. In *Britt* the accused's first trial for murder in a state court resulted in a hung jury. Upon retrial he was convicted. Between trials his request as an indigent for a free transcript of the first trial was denied. The high court considered the equal protection arguments advanced by the defendant and held that indigent defendants must be provided with the basic tools for an adequate defense when these tools are needed and available for a price to other defendants.

In *Britt* it is said:

"In prior cases involving an indigent defendant's claim of right to a free transcript, this Court has identified two factors that are relevant to the determination of need: (1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript. . . ." (404 U. S. p. 227.)

The *Britt* court pointed out that both trials were conducted in a small town before a single judge and court reporter. Defense counsel in the second trial had conducted the first trial. The reporter was available to read back notes of the first trial in advance of the second trial had he been asked to do so. In these circumstances it was held that alternative devices were available to adequately protect the defendant's constitutional rights to a fair trial and furnishing a free transcript was not required.

This court has followed *Britt* and has held that in determining whether an indigent defendant in a criminal proceeding is entitled to a transcript of a trial or other proceeding prepared at state expense, the court may consider the availability of alternative devices that would fulfill the same functions as a transcript. (*State v. Wheeler,* 215 Kan. 94, 523 P. 2d 722; *State v. McVeigh,* 213 Kan. 432, 516 P. 2d 918; and *State v. Kelley,* 209 Kan. 699, 498 P. 2d 87.) An indigent defendant in a criminal proceeding on proper showing of need is entitled to have a transcript of portions of previous trial proceedings prepared at state expense, subject however to a determination by the trial court that such transcript is necessary for the indigent to present his defense adequately.

Appellant argues that the present case is distinguishable from *Britt* because in the present case the court reporter did not live in the town where the trial took place. It has been held that limited access to a court reporter does not suffice as an alternative to a transcript of prior proceedings. (See *United States ex rel. Wilson v. McMann,* 408 F. 2d 896 [2d Cir. 1969].) However, it must be noted that in *McMann* the reporter was not present at the second trial and was not available to consult with defense counsel except under limited circumstances. In the present case it appears that the reporter was generally available for consultation before and during the second trial. Furthermore appellant did not explore other available alternatives. The record discloses that the prosecution had a copy of the transcript from the first trial which might have been shared by defense counsel upon request and order of the court. (See *Wade v. Wilson,* 396 U. S. 282, 24 L. Ed. 2d 470, 90 S. Ct. 501.)

The appellant makes no showing in this court to support a claim that he was surprised or unduly hampered in conducting his defense at the second trial. He did obtain a transcript of the testimony of the witnesses at his preliminary hearing and he does not contend that he was surprised by changes in their testimony. Appellant's right to a fair trial was not prejudiced under the facts and circumstances of this case. The matter lies within the sound discretion of the trial court. We find no abuse of discretion.

It should be noted that a request for transcript to process an appeal or other post-conviction remedy occupies a somewhat different position. Need of a transcript to process an appeal is more urgent and provision for the same is made in K. S. A. 22-4509. Appellant was furnished a transcript of his second trial to process this appeal.

Appellant next contends that he was denied a fair and impartial trial because the method of jury selection utilized in Wyandotte County failed to include a sufficient number of members of the Negro race on the jury panel. He also complains that the prosecution by exercising peremptory challenges stripped the jury of the few black members who had been on the panel.

Appellant does not argue that a discriminatory method of jury selection was utilized in his case nor does he allege or show that the method used systematically excludes Negroes from jury panels. Appellant simply asserts that the percentage of Negroes on this jury panel did not correspond with the percentage of Negroes in the general population of Wyandotte County. Thus he reasons it must be presumed that the method of jury selection used was constitutionally infirm.

Although the law requires that a jury panel be a representative cross-section of the community in which a defendant is to be tried, a Negro defendant in a criminal case is not constitutionally entitled to be tried by a jury on which there is a member, or members, of his race, and he is entitled to relief only upon proof presented by him which discloses a purposeful discrimination to exclude members of a class from the jury panel. (*State v. Clift*, 202 Kan. 512, 449 P. 2d 1006, cert. den. 396 U. S. 910, 24 L. Ed. 2d 186, 90 S. Ct. 225.)

When a challenge is made to the entire jury array, systematic or purposeful exclusion of members of a particular race or group may not be presumed. Such exclusion must be established by proof. (*Roth v. State*, 218 Kan. 413, 543 P. 2d 939; *State v. Walker*,

217 Kan. 186, 535 P. 2d 924; and *State v. Reed*, 214 Kan. 562, 520 P. 2d 1314.)

Appellant in the present case has offered no proof of systematic or purposeful exclusion in the method of jury selection.

In *Swain v. Alabama*, 380 U. S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, it was argued that constitutional equal protection of the law was denied a defendant where the prosecution utilized peremptory challenges to remove members of the Negro race from the jury panel. After examining the history, nature and purpose of the peremptory challenge the court refused to hold that striking members of a particular race or group by peremptory challenge results in a denial of equal protection. The court said it must be presumed that the prosecution has used the state's challenges to obtain a fair and impartial jury to try the case.

The rule announced in *Swain* was approved and adopted by this court in *State v. King*, 219 Kan. 508, 548 P. 2d 803. The observations in *King* are applicable to the present case.

The fact that the state by exercise of peremptory challenges has excluded all members of a race or class from the jury does not alone deprive the accused of his right to a fair trial.

Appellant next contends that his Fourth Amendment right to be free of unreasonable searches and his Fifth Amendment protections against self-incrimination were violated by the admission into evidence of tape recorded conversations between himself and Phillip White. Appellant argues that White was acting as a police agent at the time the conversations were recorded.

Assuming that White was acting as a police agent, it is settled law that an agent may tape record conversations with a criminal suspect prior to arrest without violating the suspect's Fourth Amendment rights if the agent is a party to the conversation or has the consent of a party to the conversation. (*Hoffa v. United States*, 385 U. S. 293, 17 L. Ed. 2d 374, 87 S. Ct. 408, reh. den. 386 U. S. 940, 951, 17 L. Ed. 2d 880, 87 S. Ct. 970; *State v. Daniels*, 215 Kan. 164, 523 P. 2d 368; and *State v. Wigley*, 210 Kan. 472, 502 P. 2d 819.)

Similarly there is no merit to appellant's contention that his Fifth Amendment privilege against self-incrimination was violated by the admission of the tape recordings. If prior to indictment a defendant makes incriminating statements or admissions to a government agent, is not in police custody and the statements are not a product of any sort of coercion, no right protected by the Fifth Amendment is violated by admitting the agent's testimony and the accompany-

ing tapes. No protection is afforded a wrongdoer in his misplaced belief that a person to whom he confides his wrongdoing will not reveal it. (*Hoffa v. United States,* supra; *United States v. White,* 401 U. S. 745, 28 L. Ed. 2d 453, 91 S. Ct. 1122, reh. den. 402 U. S. 990, 29 L. Ed. 2d 156, 91 S. Ct. 1643; and *State v. Daniels,* supra.)

Finally appellant contends that it was error for the trial court to refuse his request for an instruction on the defense of entrapment.

This court has held that an accused can rely on the defense of entrapment when he is induced to commit a crime which he had no previous disposition to commit. The defense is not available when a predisposition for commission of the crime is shown and an opportunity to consummate the crime is afforded by law enforcement officers. (K. S. A. 21-3210 [a]; *State v. Williamson,* 210 Kan. 501, 502 P. 2d 777; and *State v. Reichenberger,* 209 Kan. 210, 495 P. 2d 919.)

The error in appellant's position is that in this case there is no evidence of entrapment. The defense of entrapment arises when a law enforcement officer, or someone acting on his behalf, generates in the mind of a person who is innocent of any criminal purpose the original intent or idea to commit a crime which he had not contemplated and would not have committed but for the inducement of the law officer. (*State v. Hamrick,* 206 Kan. 543, 479 P. 2d 854.) A defendant can rely on the defense of entrapment when he is induced to commit a crime which he had no previous intention of committing, but he cannot rely on the defense or obtain an instruction on entrapment when the evidence establishes he had a previous intention of committing the crime and was merely afforded an opportunity by a law officer to complete it. (*State v. Wheat,* 205 Kan. 439, 469 P. 2d 338.)

In the present case the evidence shows that applicant, a probation officer, upon his own initiative approached Veralee Massey and offered to secure probation for her in exchange for a price. The police participation which followed merely provided an opportunity for defendant to consummate the crime with the aid of Phillip White. Appellant was not entitled to an instruction on entrapment under these circumstances.

No reversible error is found on the points raised. The judgment is affirmed.