No. 48,405

STATE OF KANSAS, *Appellee,* v. KENNETH AMODEI, *Appellant.*

(563 P.2d 440)

Opinion filed April 9, 1977.

*William Cather*, of Wichita, argued the cause and was on the brief for the appellant.

*Stephen Joseph*, assistant district attorney, argued the cause, and *Curt T. Schneider*, attorney general, *Vern Miller*, district attorney, and *Christopher Randall*, assistant district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Kenneth Amodei was convicted by a jury on three narcotic charges. The resulting sentences were ordered to run concurrently and were as follows: Count I (sale of heroin) not less than two nor more than twenty years; Count II (conspiracy to possess heroin) not less than one nor more than five years; Count III (possession of heroin) not less than two nor more than twenty years. The incident which gave rise to Count I occurred around midnight on January 9, 1974. The incident giving rise to Counts II and III occurred around 10:00 p. m. on January 10, 1974. We will consider Count I separately. It involved a charge of sale of heroin.

Defendant admitted at the trial he had used heroin in the past but was participating in the methadone withdrawal program at Wichita. He further testified he had not sold or offered to sell heroin since he had arrived in Wichita. He became acquainted with Steve Deems through Pam Shirley; both turned out to be undercover agents. Defendant Amodei denied making the sale charged in Count I of the information. He admitted that Deems and Shirley came to his apartment on the night in question (January 9) but testified he left as soon as they arrived. He attended a midnight concert with a friend, Joelyn Schroeder. Ms. Schroeder corroborated his story but it was later stipulated during the trial that the concert was held on January 8, not January 9.

Agents Deems and Shirley testified that on January 9, they went to defendant's apartment around midnight. Defendant was gone but they waited there for him. When defendant arrived Agent Deems asked if he had any "shooting dope" (heroin).

Defendant took a quantity of a drug from a desk, divided it and gave part to Deems. Deems paid him $28.00. Defendant allegedly informed the agents he could furnish more heroin the next day and made arrangements for them to return the following evening.

Defense counsel requested that the court instruct the jury on the defense of entrapment as to the second and third counts (conspiracy to possess and possession of heroin). On appeal he argues that an entrapment instruction should have been given, and the failure of the court to give the instruction should entitle defendant-appellant to a new trial on all counts, including Count I. We do not agree. At the trial defendant denied any participation in the January 9 incident.

In order for defendant to be entitled to an instruction on any particular defense there must be some evidence to support that defense and justify the instruction. Entrapment may arise when defendant's criminal conduct was induced or solicited by a public officer for the purpose of obtaining evidence to prosecute such person. Such a defense presupposes that defendant engaged in the criminal conduct.

This court has previously considered when such a defense is available. In *State v. Farmer,* 212 Kan. 163, 510 P. 2d 180, it is held:

"The defense of entrapment is generally not available to a defendant who denies that he committed the offense charged." (Syl. 4.)

As to Count I (sale of heroin) defendant denied any part in the incident and the record disclosed no competent evidence to justify giving an instruction on entrapment. (See *State v. Farmer,* supra, and *State v. Fitzgibbon,* 211 Kan. 553, 557, 507 P. 2d 313.)

Appellant next argues that the trial court erred in denying him the opportunity of presenting evidence to show a lack of previous disposition to commit the crime by excluding testimony of Ms. Schroeder and a Dr. Harvey. Both would have testified concerning his voluntary participation in a methadone withdrawal program and a concentrated effort on his part to rid himself of the heroin habit.

Generally, evidence of prior disposition or lack of prior disposition to commit crimes or other civil wrongs is not admissible to establish a basis for an inference that a person did or did not commit a crime on another specified occasion. See K.S.A. 60-455. However, if the accused introduces evidence to establish the

defense of entrapment, as codified in K.S.A. 21-3210, he then raises the issue. The prosecution then may show prior disposition of the accused to commit such crimes. See *State v. Reichenberger,* 209 Kan. 210, 495 P. 2d 919. Such evidence is relevant only on the question of entrapment. When the defense of entrapment is not available to an accused, evidence of prior disposition to commit crimes of the nature charged is not relevant and it is not error to exclude such evidence. In the present case the defense of entrapment was not available to defendant on Count I of the information and it was not error to exclude the proffered testimony as it related to Count I.

Appellant's final point bearing on Count I (sale of heroin) concerns the refusal of the trial court to honor his challenge for cause of prospective juror Glen Bryant. Defense counsel's objection to this particular juror was based on the employment of Bryant in the personnel department of the city. Bryant's employment required him to investigate the qualifications of those applying for jobs with the city, including police officers. Defense counsel questioned Bryant as to whether he might give special weight to testimony given by police officers. Bryant stated he did not believe a police officer's testimony was any better than that of anyone else; that a police officer could be mistaken in his testimony; and that he believed an officer would tell the truth and would not intentionally tell a falsehood.

The court refused to excuse Bryant for cause, stating that a juror has a right to begin with the premise that every witness will tell the truth, whether he is a policeman or not. (Even though not removed for cause, Mr. Bryant was removed from the panel by peremptory challenge exercised by the defendant. See *State v. Sagebiel,* 206 Kan. 482, 480 P. 2d 44.)

K.S.A. 22-3410 provides that a prospective juror may be challenged for reasons set forth in the statute and that challenges for cause shall be tried to the court. The only basis for challenge applicable here appears to be K.S.A. 22-3410 (2) (*i*) which reads:

"His state of mind with reference to the case or any of the parties is such that the court determines there is a doubt that he can act impartially and without prejudice to the substantial rights of any party."

Whether a prospective juror is qualified to sit in the trial of a case is a question for determination by the trial court, and its ruling will not be disturbed unless it is clearly erroneous or there

has been an abuse of judicial discretion. (*State v. Nix*, 215 Kan. 880, 529 P. 2d 147; *State v. Mahkuk*, 220 Kan. 74, 551 P. 2d 869.) The court's ruling in the present case was not erroneous, and there was no showing sufficient to establish the state of mind contemplated in K.S.A. 22-3410 (2) (*i*).

The defendant's conviction on Count I (sale of heroin) is hereby affirmed on appeal.

We now turn to Counts II and III. The incident giving rise to these counts occurred around 10:00 p. m. on January 10, 1974. The two agents went to defendant's apartment to obtain heroin from the defendant. They were informed by defendant that he had none in his apartment but would try to make arrangements to obtain some for the agents. Defendant Amodei made a telephone call to Ms. Schroeder and then all of those present drove over to her house to pick her up. She gave directions to the driver. The car was parked near an intersection. Ms. Schroeder advised those in the car that she would have to proceed alone and would "go get it".

Deems testified he gave $30.00 to defendant and defendant gave it to Ms. Schroeder along with $50.00 of his own money. Ms. Schroeder left the car, disappeared around a corner and returned in twenty minutes with a tin foil packet which she handed to defendant. They all returned to defendant's apartment house and the substance in the foil packet was divided among Agent Deems, Agent Shirley and the defendant Amodei.

Thereafter the agents turned their shares of the substance in to the sheriff's office. (The substance was introduced in evidence at the trial and identified as heroin.) A warrant was issued for the arrest of Amodei and he turned himself in to the police department on learning of the warrant. The agent who took Amodei into custody testified that Amodei advised him at that time that he (Amodei) was "only trying to help a friend. Do them a favor."

At the trial defendant testified as to his previous acquaintance with Pam Shirley. He stated that on the evening of January 10, she appeared at his apartment with Steve Deems. Defendant Amodei's story on the witness stand while being questioned by his attorney was as follows:

"Q. All right. And could you just continue and relate what happened when they arrived up in your apartment?

"A. The night before she did ask me about some LSD and I told her there was

nothing I could do for her; and she asked me the same question that night. And I said no, and Steve Deems said to me. He says, 'Look'. He says, 'I'm down here from Seattle, Washington,' he says, 'I'm on a month vacation. I work up in the lumber yards'. And he says, 'I've been doing a lot of junk' and he says, 'If I don't get a fix in a hurry, I'm going to be hurting for the night.'

"And I knew it was too late to go to the methadone program because it closes at five o'clock and I really felt sorry for him. Because he appeared to be shaking and looked like he was on his way to withdrawal.

"Q. So what did you tell him then?

"A. I told him, I said I would see what I could do for him if he promised me that he would go to the methadone clinic the next day. I told him they had a twenty-one day detox program and he said yes, he would."

The balance of his testimony pretty well follows the testimony of Agents Deems and Shirley as to the events of the evening of January 10. He testified that it was not until after he had arranged with Ms. Schroeder to make the "buy" for Deems that he decided he would get some heroin for himself. The state offered no evidence of prior convictions to establish that defendant had a predisposition for the possession or sale of drugs.

On appeal defendant-appellant argues that the trial court erred in refusing to give a requested instruction on entrapment as to Counts II and III. This court agrees.

Where some evidence is offered by a defendant in support of the defense of entrapment and a conflict is presented whether the intent to engage in an enterprise involving narcotics originated in the mind of defendant or was instigated by officers or agents of the state, the issue becomes a question for the trier of facts, and an instruction on entrapment should be given on request. (*State v. Farmer*, supra; *State v. Reichenberger*, supra, Syl. 1.)

In discussing when the defense of entrapment is available this court in *State v. Jordan*, 220 Kan. 110, 551 P. 2d 773, stated:

". . . The defense of entrapment arises when a law enforcement officer, or someone acting on his behalf, generates in the mind of a person who is innocent of any criminal purpose the original intent or idea to commit a crime which he had not contemplated and would not have committed but for the inducement of the law officer. (*State v. Hamrick*, 206 Kan. 543, 479 P. 2d 854.) A defendant can rely on the defense of entrapment when he is induced to commit a crime which he had no previous intention of committing, but he cannot rely on the defense or obtain an instruction on entrapment when the evidence establishes he had a previous intention of committing the crime and was merely afforded an opportunity by a law officer to complete it. (*State v. Wheat*, 205 Kan. 439, 469 P. 2d 338.)" (p. 116.)

On examining the present record we believe the defense of

entrapment as to Counts II and III should have been available to the defendant. The crimes charged involved conspiracy to possess and possession of heroin. A conflict appears in the evidence as to whether the intent to possess the narcotics originated in the mind of the defendant or was instigated by the agents of the state. It is important to note that defendant was not charged with a sale in either Count II or Count III. At the time of the contact by the agents the defendant did not know of a source of heroin but had to contact a friend, Ms. Schroeder. According to defendant's version Agent Deems appeared to be suffering and in need of the drug; if true, this would indicate more than a casual solicitation of drugs and ready compliance by defendant. See *State v. Bagemehl,* 213 Kan. 210, 213, 515 P. 2d 1104.

The points raised by defendant-appellant as to exclusion of the testimony of Ms. Schroeder and Dr. Harvey present different situations when considering Counts II and III. If entrapment is a viable defense an issue is raised which focuses on intent and predisposition of the defendant to commit the offense. (*State v. Bagemehl,* supra; *State v. Jordan,* supra.)

The exclusion of testimony of Ms. Schroeder was the result of the following questioning by the defendant's attorney, Mr. Coke:

"Q. Was it actually correct, as far as you could tell from your conversation and communication with him, that his desire was to get away from heroin and get off the habit?

"MR. SKINNER: Well, your Honor, I think that calls for speculation.

"THE COURT: I think that calls for her to tell us what he's thinking; and I don't think she can do that.

"Q. (By Mr. Coke) Did you see any indications at all that Ken ever desired to be a dealer?

"MR. SKINNER, Well, Your Honor, I'm going to object to that, too.

"THE COURT: I'm going to sustain the objection, Mr. Coke.

"MR. COKE, Thank you, Your Honor."

## K.S.A. 60-456 (*a*) provides,

"If the witness is not testifying as an expert his or her testimony in the form of opinions or inferences is limited to such opinions or inferences as the judge finds (*a*) may be rationally based on the perception of the witness and (*b*) are helpful to a clearer understanding of his or her testimony."

Under this statute the trial judge is vested with wide discretion. (*Osborn v. Lesser,* 201 Kan. 45, 47, 439 P. 2d 395; *Howard v. Miller,* 207 Kan. 246, 252, 485 P. 2d 199; *State v. Duncan,* 221 Kan. 714, 562 P.2d 84.) When it is not shown the witness had

sufficient knowledge on which to base an opinion, the opinion testimony is so conjectural it lacks probative value and may be properly excluded by a trial court. (*State v. Duncan,* supra, Syl. 6. See also *State v. Zimmer,* 198 Kan. 479, 502, 426 P.2d 267, cert. den. 389 U.S. 933, 19 L.Ed.2d 286, 88 S.Ct. 298.) Here the witness' testimony as to defendant's "desire" would have been too conjectural and the testimony was properly excluded.

However, the proffer of testimony by Dr. Harvey, Medical Director of the Drug Treatment Program of the Sedgwick County Mental Health Department, presents a different picture. Dr. Harvey was a consultant in the department's methadone program. She testified that on the basis of weekly urine screenings the only indications of heroin usage by defendant prior to January 10, 1974, were on November 29, 1973, and December 12, 1973. She further testified the analysis or urine samples were done in California because Wichita had not approved laboratories for that purpose. She testified these tests on November 29 and December 12 were based on the local analysis and therefore were regarded by them as unreliable. She further testified as to defendant's participation in the methadone program.

The court excluded the doctor's proffered testimony because he felt the defendant's use or nonuse of drugs and his progress in the program did not prove or disprove the charges.

To disprove entrapment the state must show a predisposition to commit the crime, since it was the state who approached defendant and he admitted participation. Contrary to the general rules of evidence, the state may even introduce evidence of prior convictions, criminal activities or previous suspicious conduct to show this predisposition, which may tend to disprove entrapment. (See *State v. Reichenberger,* supra, p. 218.)

The court was incorrect in its holding that the use or nonuse of drugs was not relevant to predisposition. Defendant's participation in a methadone withdrawal program and testimony of his supervisor as to tests made on urine samples to determine whether he was using heroin were relevant evidence bearing on predisposition to use and possess heroin. Evidence bearing upon habitual use, or nonuse, of heroin would have probative force. See *State v. Faulkner,* 220 Kan. 153, 551 P. 2d 1247. When an accused is charged with possession of drugs and has presented a

viable defense based on entrapment, evidence of habitual use, or nonuse, of such drugs is relevant on the question of predisposition to possess and should be admitted in evidence.

Although the admissibility of evidence is largely within the trial court's discretion (*State v. Baker,* 219 Kan. 854, 549 P. 2d 911), entrapment was a viable defense under the evidence proffered in the present case on Counts II and III. It was error to exclude the testimony of Dr. Harvey bearing on lack of predisposition to use and possess heroin.

Accordingly the judgment and sentence on Count I (sale of heroin) is affirmed and the judgment and sentences on Counts II and III (conspiracy to possess and possession of heroin) are reversed and the case is remanded for a new trial on Counts II and III in accordance with the opinions expressed herein.