(225 P.3d 741)
No. 101,440

STATE OF KANSAS, *Appellee*, v. DAVID LEE RALSTON, JR., *Appellant*.

Opinion filed February 26, 2010.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Heather R. Jones*, county attorney, and *Steve Six*, attorney general, for appellee.

Before STANDRIDGE, P.J., PIERRON and BUSER, JJ.

BUSER, J.: David Lee Ralston, Jr., appeals from his felony conviction for possessing marijuana without having affixed an appropriate stamp or label, in violation of K.S.A 79-5208, and misdemeanor convictions for possession of marijuana, in violation of K.S.A. 65-4105(d)(16) and K.S.A. 65-4162(a), and possession of drug paraphernalia, in violation of K.S.A. 65-4152(a)(2). Ralston contends the district court erred by denying his motion to dismiss the charges because he had a contract or agreement with Ottawa police officers that provided him with immunity from prosecution if he was honest and provided them with the names and addresses of drug dealers. In addition, Ralston argues entrapment and claims

his convictions for possession of marijuana and possession of drug paraphernalia were multiplicitous. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 1, 2007, officers with the Ottawa Police Department Drug Enforcement Unit conducted a "buy-bust operation" at the Days Inn hotel. As part of the operation, an informant contacted Ralston and asked him to bring 2 ounces of marijuana to room 164 where, unbeknownst to Ralston, several undercover police officers waited for him. Ralston arrived at the room within 30 minutes of the informant's call and was immediately pulled into the room, arrested, handcuffed, and searched.

The search of Ralston resulted in the seizure of two bags of marijuana weighing about 2 ounces, and a wooden "hitter box," which was described as a box used to conceal and smoke marijuana. The hitter box contained a burnt marijuana cigarette and a pipe which was described as "a metal cylindrical tube . . . painted to look like a cigarette." Subsequent laboratory examination revealed that both the box and the pipe contained marijuana residue.

The police officers had a conversation with Ralston after his arrest. The details of this conversation were controverted. During a pretrial evidentiary hearing, Detective Procaccini testified that immediately after he advised Ralston of his rights under *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966), he told Ralston "that he needed to be honest with me and then I'd be able to help him." According to Detective Procaccini, Ralston told him "he would do anything to help."

Ralston then admitted that he came to the hotel room to sell marijuana and provided the officers with names of some drug dealers. Detective Procaccini testified that at some point during the conversation he told Ralston that "if he had someone deliver more drugs to this hotel room than he brought he could go home." The detective testified that when he told Ralston "he could go home" he meant that Ralston would never be arrested for his drug crimes. Sergeant Mike Hatheway, Detective Procaccini's supervisor, also testified to the conversation with Ralston and generally corroborated the detective's account.

At the pretrial hearing, Ralston testified that Detective Procaccini told him that if he was honest the detective would be able help him out. Ralston also admitted telling Detective Procaccini, "I'll do anything to help." Ralston testified that when Detective Procaccini said he would be willing to "help" him if Ralston was honest, Ralston understood that to mean the detective "would let me go." Ralston conceded, however, that at that time Detective Procaccini never specified what he meant by the phrase, "he would help me." In the end, Ralston was unable to arrange for a dealer to bring a larger quantity of drugs to the hotel room than the 2 ounces Ralston had brought with him. The police then transported Ralston from the scene. Drug charges were later filed by the Franklin County Attorney's office.

Prior to trial, Ralston moved to suppress his incriminating statements. After hearing evidence, the district court granted Ralston's motion to suppress, concluding that his "incriminating statements were induced by a promise of a specific benefit that no charges would be filed against him, that he could go home." The State does not appeal this adverse ruling.

Ralston also filed a motion to dismiss the charges. In his motion, Ralston contended that he "and law enforcement made a binding contract" to let "[Ralston] go free." The district court denied the motion to dismiss, however, finding there was no contract or agreement between Ralston and the police. The district court also ruled the officers' conduct was not outrageous and did not violate due process.

The case proceeded to a bench trial where, during closing argument, Ralston first raised the defense of entrapment with regard to the possession of marijuana charges. The district court rejected the defense, finding Ralston's possession of the hitter box showed a predisposition to possess marijuana. At the trial's conclusion, the district court found Ralston guilty of possessing marijuana without having affixed an appropriate stamp or label, possession of marijuana, and possession of drug paraphernalia. Ralston was sentenced to a controlling 11-month prison sentence but granted a downward dispositional departure and placed on a 12-month probation. He filed a timely appeal.

## DENIAL OF RALSTON'S MOTION TO DISMISS

A district court's ruling on a defendant's motion to dismiss criminal charges with prejudice is reviewed under an abuse of discretion standard. *State v. Bolen*, 270 Kan. 337, Syl. ¶ 2, 13 P.3d 1270 (2000). "Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *State v. Gant*, 288 Kan. 76, 81-82, 201 P.3d 673 (2009). Under the abuse of discretion standard, an appellate court also reviews whether the district court's discretion was guided by erroneous legal conclusions. *State v. Moore*, 287 Kan. 121, 135, 194 P.3d 18 (2008).

On appeal, Ralston contends the district court committed reversible error by not dismissing the charges against him. In particular, Ralston argues that an enforceable contract was created between him and the police officers. This contract provided that if Ralston truthfully provided the names and addresses of drug dealers, the officers would "help" him. According to Ralston, he understood "help" to mean "release and no prosecution, in return for truthful information." Ralston further contends that his "informant agreement should be treated as if it were a plea agreement." Applying contract principles, Ralston argues that he complied with his part of the bargain and the district court should have ordered specific performance of the State's part of the bargain "and let Ralston go."

The State presents a two-part argument in response. First, the State submits "[a]s stated by the district court, there was never an enforceable contract between law enforcement and the defendant there was no meeting of the minds or mutual manifestation of assent between the defendant and law enforcement." Second, "[i]f a contract had, in fact, been solidified between law enforcement and the defendant, there is no binding Kansas authority that holds that the prosecution would be bound by such a contract."

After considering the evidence, the district court found there was no enforceable contract made between Ralston and the police. In particular, the district judge held:

"The only thing close that the court could think of with regards to contract law or the situations where there's a broken promise . . . by the State, in a plea bargaining situation, but I don't think that's really applicable to this situation based on the facts even in the light most favorable to the defendant. In this case I don't believe that there was a [*sic*] enforceable contract entered into by the defendant and the police officers. There was no meeting of the minds or mutual manifestation of assent between defendant and the officers, and as I've hinted earlier, I don't believe contract law applies to this situation."

An appellate court reviews the district court's findings of fact to determine if the findings are supported by substantial competent evidence and are sufficient to support the district court's conclusions of law. *Hodges v. Johnson*, 288 Kan. 56, 65, 199 P.3d 1251 (2009); *State v. Ratley*, 253 Kan. 394, 398, 855 P.2d 943 (1993).

"Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. In other words, substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion." *Drach v. Bruce*, 281 Kan. 1058, Syl. ¶ 2, 136 P.3d 390 (2006).

Whether any contract or agreement existed between Ralston and the officers was highly controverted. On appeal, Ralston argues the contract provided that if Ralston truthfully supplied the names and addresses of drug dealers, the police would "help" him by releasing him from custody and never prosecuting him for his drug crimes. Ralston testified, however, that Detective Procaccini never specifically told him that he would be freed by simply being honest and providing information regarding drug dealers. Ralston clarified that no specific promise was made, and the detective "just told me that if I'd help him out he'd help me out." Regardless of the detective's vague language, Ralston believed that if he did cooperate he would be released and not charged with any drug crimes.

Consistent with Ralston's testimony, Detective Procaccini testified he did not specify what he meant when he initially told Ralston that if he was honest the detective would help him. According to Detective Procaccini, at a later time in his conversation, however, he proposed that if Ralston was able to bring another drug dealer to the hotel room with a larger quantity of drugs than Ralston brought, "he could go home." Ralston admitted he was unable to

procure any other dealers to deliver drugs to the hotel room. Detective Procaccini testified that Ralston "did nothing to get me drugs delivered to that hotel room."

Detective Procaccini's supervisor, Sergeant Mike Hatheway, testified that he was the officer who pulled Ralston into the hotel room, and immediately arrested and handcuffed him. According to Sergeant Hatheway, prior to any questions being asked of Ralston, "he blurted out if you guys need help with anything I'll help you." During the evidentiary hearing, the following colloquy occurred between the prosecutor and Sergeant Hatheway about the conversation that occurred shortly after Ralston's arrest:

"Q. Okay. Now, Sergeant Hatheway, once you were done with Mr. Ralston's case so to speak how exactly did you transition into talking about future operations?

"A. We began to talk to Mr. Ralston about him helping himself out on this case and that if he could provide us with information and get someone else to come to the room to deliver a quantity of drugs that was significantly larger than what he had then we could help him with his case that he had been arrested for.

"Q. Okay. Was it ever presented to him that if he just provided names that the case that he had just been arrested on would go away?

"A. Absolutely not.

"Q. In your experience as supervisor and your experience as a law enforcement officer have you ever been in a situation where you made the offer if you just provide names all that goes away?

"A. No. I know hundreds of names of people who are using, selling, dealing drugs, but that doesn't give me the means or capability to go arrest them or charge them. I know the names of people. I need somebody to take action to provide us with that ability.

"Q. And on this particular evening with Mr. Ralston did you indicate what action you wanted him to take?

"A. Yes.

"Q. And what specifically was that?

"A. We wanted him to contact somebody and have them deliver drugs to that same motel room.

"Q. And did he indicate whether or not he was willing to do that?

"A. He indicated that he could not do that at that time."

To the extent contract law applies here, the district court's determination that no enforceable contract existed was a finding of fact. " 'When the evidence pertaining to the existence of a contract or the content of its terms is conflicting or permits more than one

inference, a question of fact is presented.' " *Nungesser v. Bryant*, 283 Kan. 550, 566, 153 P.3d 1277 (2007), as quoted in *State v. Sharp*, 289 Kan. 72, 92, 210 P.3d 590 (2009). It is well known that "the appellate court must accept as true the evidence and all inferences drawn from the evidence which tend to support the findings of the trial judge." *Drach*, 281 Kan. at 1067.

"In order for parties to form a binding contract, there must be a meeting of the minds as to all essential terms thereof." *Dougan v. Rossville Drainage Dist.*, 270 Kan. 468, 488, 15 P.3d 338 (2000). "To constitute a meeting of the minds there must be a fair understanding between the parties which normally accompanies mutual consent and the evidence must show with reasonable definiteness that the minds of the parties met upon the same matter and agreed upon the terms of the contract." *Steele v. Harrison*, 220 Kan. 422, Syl. ¶ 3, 552 P.2d 957 (1976). "Any expression of assent that changes the terms of the offer in any material respect may be operative as a counteroffer, but it is not an acceptance and constitutes no contract." 220 Kan. 422, Syl. ¶ 4.

There was substantial competent evidence to support the district court's finding that there was not an "enforceable contract" because "[t]here was no meeting of the minds or mutual manifestation of assent between [Ralston] and the officers."

Ralston understood the contract or agreement provided him immunity from prosecution based on Detective Procaccini's vague promise of help if Ralston was honest. In Ralston's view, he was only required to truthfully provide names and addresses of drug dealers in order to avoid being prosecuted for drug charges. Both Detective Procaccini and Sergeant Hatheway, however, denied promising Ralston immunity in return for truthful information about the names and addresses of drug dealers.

For his part, Detective Procaccini's understanding was that any promise of immunity from prosecution was specifically conditioned upon Ralston procuring a drug dealer to deliver to the hotel room a quantity of drugs greater than the 2 ounces Ralston had brought to the hotel room. It was uncontroverted that Ralston did not comply with this condition. If a promise is conditional, the person seeking to enforce the promise " 'cannot avail himself of the benefit of

it without complying with the conditions.' " *Green v. Goble,* 7 Kan. 297, 302 (1871), as quoted in *State v. Sharp,* 289 Kan. at 92.

Given the highly disputed evidence regarding whether a contract was agreed upon and, if so, what the terms of the agreement were and whether those terms were complied with, we are persuaded the district court did not abuse its discretion by finding there was no enforceable contract or agreement.

Moreover, as argued by the State, there is another basis upon which to uphold the district court's denial of Ralston's motion to dismiss. Assuming there was an immunity contract or agreement between Ralston and the officers, that agreement was unenforceable because it was made without the authority of the county or district attorney responsible for the State's prosecution. Moreover, to the extent an unauthorized promise by the police improperly procured Ralston's incriminating statements, the district court ordered the appropriate remedy—suppression of Ralston's incriminating statements.

Ralston's insistence on specific performance of the agreement is predicated on his belief that "when Ralston truthfully provided the names of potential drug sting targets to the police, due process mandated *the State* perform as it promised and let Ralston go." (Emphasis added.)

To the extent this question involves statutory interpretation, our review is de novo. See *State v. Jefferson,* 287 Kan. 28, 33, 194 P.3d 557 (2008). Our task is to " 'ascertain the legislative intent through the statutory language it employs, giving ordinary words their ordinary meaning.' [Citation omitted.]" *State v. Gracey,* 288 Kan. 252, 257, 200 P.3d 1275 (2009).

Crimes are committed "against the state of Kansas," K.S.A. 21-3102, and "[a]ll prosecutions for violations of the criminal laws of this state shall be in the name of the state of Kansas." K.S.A. 22-2104. Prosecutors, not law enforcement officers, represent the State in criminal proceedings. See K.S.A. 19-702 (county attorneys); K.S.A. 22-2202(17) (prosecuting attorneys generally). And prosecutors, not law enforcement officers, "may at any time, on behalf of the state, grant in writing" immunity to witnesses. K.S.A.

22-3415(b). Law enforcement officers, however, do not have that authority. See K.S.A. 22-2202(13) (outlining duties).

This statutorily expressed public policy, to keep the "prosecution of the case . . . at all times in the hands of the public prosecutor," is "consistent with that traditionally adopted throughout this country." *State ex rel. Rome v. Fountain*, 234 Kan. 943, 949, 678 P.2d 146 (1984). Thus, the general rule is not to enforce a defendant's immunity agreement made solely with law enforcement officers. See *Green v. State*, 857 P.2d 1197, 1199-1201 (Alaska App. 1993) (discussing cases); 21 Am. Jur. 2d, Criminal Law § 247, p. 361.

In *State v. Spradlin*, 12 S.W.3d 432, 433 (Tenn. 2000), for example, the Supreme Court of Tennessee considered "whether an agreement not to prosecute made between [defendant] . . . and two officers is enforceable *without the district attorney general's knowledge or approval.*" (Emphasis added.) The court noted the "well-settled law and custom that a district attorney general has the sole duty, authority, and discretion to prosecute criminal matters. [Citations omitted.]" 12 S.W.3d at 436. The court emphasized the contrasting "clear rule" concerning law enforcement officers, that they "do not possess the authority to bind prosecutors to *unauthorized* immunity or nonprosecution agreements." (Emphasis added.) 12 S.W.3d at 436. Among other considerations, the court was "concerned that enforcement of unauthorized promises between officers and defendants would raise serious questions about the officers' power to manipulate the criminal justice system." 12 S.W.3d at 436. As a result, the court concluded the officers were "without authority to bind the district attorney general to an agreement not to prosecute." 12 S.W.3d at 434.

We conclude that law enforcement officers, absent the prior knowledge and approval of county and district attorneys, are without authority to enter into immunity agreements. This approach is consistent with the legislature's purpose to empower county and district attorneys—not law enforcement officers—with the discretion to file, reduce, or dismiss criminal charges and grant immunity to individuals on behalf of the State of Kansas.

Ralston contends "[c]oncerning the state's objection to perform on its part of the bargain, Ralston's informant agreement should

be treated as if it were a plea agreement." Generally, courts apply fundamental contract principles in both the interpretation and enforcement of plea bargains. See *State v. Boley*, 279 Kan. 989, 993, 113 P.3d 248 (2005). There are important differences, however, which distinguish Ralston's claimed immunity agreement and a typical plea agreement.

First, any agreement in Ralston's case was made prior to any review or filing of formal charges by the prosecutor, whereas a plea agreement is typically formulated after the prosecutor has filed charges. Second, any agreement in this case was transacted between Ralston and the officers without the knowledge or approval of the prosecutor, while a plea agreement is executed between a defendant and the prosecutor, as the legal representative of the State. See K.S.A. 21- 4713 (actions which prosecutors may take under agreements with defendants for plea). Third, the ambiguous and disputed terms of Ralston's claimed immunity agreement were not subject to court review before the agreement was executed, whereas plea agreements are subject to court review, and the district court "is not bound by its terms and can reach an independent decision on whether to approve a negotiated charge or sentence concessions." *Boley*, 279 Kan. 989, Syl. ¶ 2. In short, we find important dissimilarities between Ralston's claimed immunity agreement in this case and a typical plea agreement.

Ralston next equates the claimed immunity agreement with the so-called charge agreement at issue in *Ratley*, 253 Kan. at 395. In *Ratley*, agents with the Kansas Bureau of Investigation (KBI) seized growing marijuana plants and packages of marijuana from Ratley's farm. Ratley was arrested. Craig Cole, Anderson County Attorney, authorized KBI Special Agent Tom Williams to enter into an agreement with the defendant on behalf of the State. The agreement was prepared and signed by Williams and the defendant before a notary public. The document provided that if Ratley told the truth regarding his involvement in illegal activities the State agreed to charge him with one count of possession of marijuana with intent to sell and to waive additional charges for felonies of the level C or below. If Ratley did not tell the truth or assist in the investigation, the agreement was void and provided: " 'the County

Attorney or his designate is free to charge me with any and all counts they deem necessary.' " 253 Kan. at 395.

Ratley complied with his part of the bargain, but the State did not, charging him with possession of marijuana with intent to sell and alternatively with cultivation of marijuana (a class C felony). Ratley filed a motion to enforce the agreement, and the district court sustained the motion, striking the cultivation of marijuana count. 253 Kan. at 395.

Noting the agreement had been made with the " 'knowledge and authority of the Anderson County Attorney,' " 253 Kan. at 395, the district court equated this " 'charge agreement,' " 253 Kan. at 396, with a plea agreement noting " 'the interests of justice and appropriate recognition of the duties of the prosecution, in relation to promises made, will best be served by specifically enforcing the charge agreement.' " 253 Kan. at 397.

The State appealed the district court's decision, but the Supreme Court affirmed and observed: "The district court, based on substantial competent evidence, found the agreement as entered into was with the 'full knowledge and authority of the Anderson County Attorney, Craig Cole.' " 253 Kan. at 399. Consistent with this finding, our Supreme Court also stated: "The county or district attorney is the representative of the State in criminal proceedings. He or she has the authority to dismiss any charge or reduce any charge." 253 Kan. 394, Syl. ¶ 4.

Similarly, in another case Ralston cites, *State v. Wacker*, 268 Neb. 787, 788, 688 N.W.2d 357 (2004), an "officer . . . entered into a cooperation agreement" only "after speaking *with the county attorney*." (Emphasis added.)

The charge agreement in *Ratley*, and the cooperation agreement in *Wacker* (similar to plea agreements in general) are noteworthy because each agreement was made with the prior knowledge and approval of the county attorney who had the legal authority to bind the State. Accordingly, the State's breach of the agreement, which it entered into, resulted in specific performance of the State's broken promise. In the present case, however, Ralston does not allege and there is no evidence of record to suggest, that the county attorney knew of or approved of any immunity agreement. Under

these circumstances, enforcement of the unauthorized agreement against the State, which was not even a party to the agreement, is unwarranted.

We acknowledge "distinctions between the authority of the police and that of the prosecutor mean little to a defendant negotiating with a government officer." *State v. Sturgill*, 121 N.C. App. 629, 643, 469 S.E.2d 557 (1996). We also recognize that "a police officer is just as capable of implicating defendant's constitutional rights as the district attorney who refused to honor the police promise to defendant. [Citation omitted.]" 121 N.C. App. at 643. Yet, as in the present case, where a defendant relies upon the unauthorized promise of a law enforcement officer, "the remedy which accords substantial justice to defendant is that which returns him to his position prior to the confession. Thus, since suppression or exclusion of the confession cures defendant's detrimental reliance, specific performance is unwarranted." 121 N.C. App. at 647.

In this case, Ralston responded to an informant's request to bring 2 ounces of marijuana to the hotel room in order to effect a drug sale. Ralston was pulled into the hotel room by police officers, immediately arrested, handcuffed, and searched. Marijuana and drug paraphernalia were found on Ralston which resulted in the prosecutor exercising his statutory authority and discretion by filing drug charges. The incriminating evidence was procured prior to and apart from any later discussions or purported immunity agreements with Ralston. To the extent the officers' unauthorized promise of immunity improperly induced Ralston's subsequent incriminating statements, the district court properly remedied the violation of Ralston's Fifth Amendment rights by imposition of the exclusionary rule and suppression of the evidence. See *State v. Swanigan*, 279 Kan. 18, 39-40, 106 P.3d 39 (2005), and *State v. Baston*, 261 Kan. 100, 107-08, 928 P.2d 79 (1996) (discussing the voluntariness of confessions obtained after promises or threats by law enforcement officers).

We hold the district court did not err in its denial of Ralston's motion to dismiss the charges.

## ENTRAPMENT

Ralston also contends his marijuana convictions should be reversed because he was entrapped by the police. In particular, Ralston claims "the police used [the informant], the subject of a prior police sting, to contact Mr. Ralston and ask Mr. Ralston to bring marijuana to the motel room to sell [and] . . . [t]here is absolutely no indication in the record that Mr. Ralston had any intention of possessing marijuana absent [the informant's] request that he do so."

The State responds that Ralston's possession of "drug paraphernalia used to both store marijuana and to introduce it into the human body . . . was evidence that the informant merely afforded him the opportunity to possess the marijuana . . . and . . . [Ralston] had the intent to engage in the criminal conduct of possessing marijuana before the informant requested the sale."

To the extent we interpret the entrapment statute, K.S.A. 21-3210, our review is de novo. See *Jefferson*, 287 Kan. at 33. The question of whether Ralston's entrapment defense to the possession of marijuana charges was rebutted by evidence of an intent and predisposition to possess marijuana is a question of fact. See *State v. Van Winkle*, 254 Kan. 214, 224, 864 P.2d 729 (1993); *State v. Rogers*, 234 Kan. 629, 632, 675 P.2d 71 (1984); PIK Crim. 3d 54.14. In this regard, our review is for the sufficiency of the evidence. *Van Winkle*, 254 Kan. at 224.

"When the sufficiency of the evidence is challenged, the standard of review on appeal is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. [Citation omitted.]" 254 Kan. at 224.

The entrapment defense was codified in 1969. See L. 1969, ch. 180, sec. 21-3210; *State v. Houpt*, 210 Kan. 778, 780, 504 P.2d 570 (1972); *State v. Reichenberger*, 209 Kan. 210, 215, 495 P.2d 919 (1972). The statute reads in relevant part:

"A person is not guilty of a crime if his criminal conduct was induced or solicited by a public officer or his agent for the purposes of obtaining evidence to prosecute such person, unless:

"(a) The public officer or his agent merely afforded an opportunity or facility for committing the crime in furtherance of a criminal purpose originated by such person or a co-conspirator." K.S.A. 21-3210.

In *Reichenberger*, a case decided on precodification law, our Supreme Court held that once inducement by the government has been proven, "previous intention or predisposition [to commit the crime] must be shown to rebut entrapment." 209 Kan. at 217. In *Houpt*, which applied the new statute, K.S.A. 21-3210, our Supreme Court found "no difference in the import of the codified language and the parallel expression in *Reichenberger*." 210 Kan. at 782. As a result, although K.S.A. 21-3210 does not include the word "predisposition," that is typically how the issue is framed in entrapment cases. See, *e.g.*, *State v. Gasser*, 223 Kan. 24, Syl. ¶ 2, 574 P.2d 146 (1977); *State v. Carr*, 23 Kan. App. 2d 384, 384-85, 931 P.2d 34 (1997).

In the analysis of entrapment cases, " '[t]he extent of government activity in soliciting the crime charged is weighed . . . against defendant's willingness to comply, and other evidence of predisposition to determine whether defendant originated the criminal purpose or was entrapped.' " *State v. Rogers*, 234 Kan. 629, 632, 675 P.2d 71 (1984) (quoting *State v. Bagemehl*, 213 Kan. 210, Syl. ¶ 4, 515 P.2d 1104 [1973]).

We believe a rational factfinder could have concluded beyond a reasonable doubt that Ralston was predisposed to possess marijuana. In addition to the bags of marijuana, the possession of which was apparently induced by the informant acting as a government agent, Ralston possessed the hitter box and its contents. Law enforcement officers testified the hitter box was used to conceal and smoke marijuana. This paraphernalia also contained marijuana residue indicative of personal use. As the district court correctly noted, Ralston "was not induced by the officers or [confidential informant] to purchase a hitter box, use it, leave the butt of a marijuana joint in the hitter box, etc."

Moreover, evidence of "criminal activity or . . . previous suspicious conduct" is only "one of the accepted methods of establishing predisposition." *Reichenberger*, 209 Kan. at 218. "[R]eady compliance by the defendant" is also "accepted as evidence of predispo-

sition." *State v. Fitzgibbon*, 211 Kan. 553, 555, 507 P.2d 313 (1973).

Evidence at trial showed that Ralston arrived at the hotel room within 30 minutes of the informant's phone call requesting 2 ounces of marijuana. Viewed in the light most favorable to the State, Ralston's ready compliance when asked to bring marijuana to the hotel room showed his predisposition to possess it. Accordingly, the trial court did not err in rejecting Ralston's entrapment defense.

## MULTIPLICITY

Ralston was charged with possession of marijuana and possession of drug paraphernalia after the search incident to his arrest revealed two bags of marijuana, the hitter box, and pipe. For the first time on appeal, Ralston contends that, under the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution which generally prohibits multiple charges for a single offense, these two items could not be considered drug paraphernalia because they also contained marijuana residue and Ralston was charged in a separate count with possession of marijuana.

"Whether convictions are multiplicitous is a question of law subject to unlimited review." *State v. Fisher*, 283 Kan. 272, Syl. ¶ 16, 154 P.3d 455 (2007).

Ralston did not raise the multiplicity issue in the district court. Generally, issues not raised before the district court may not be raised on appeal. *State v. Warledo*, 286 Kan. 927, 938, 190 P.3d 937 (2008). An appellate court may consider multiplicity for the first time on appeal, however, to serve the ends of justice or prevent a denial of fundamental rights. See *State v. Dubish*, 234 Kan. 708, 718, 675 P.2d 877 (1984). On appeal, Ralston does not assert or show how our review would facilitate those purposes. As a result, this issue was not preserved for appellate review.

If this court were to consider the merits of this issue, however, we would conclude that Ralston's argument has no merit.

Ralston relies on *State v. Castillo*, 34 Kan. App. 2d 169, 115 P.3d 787, *rev. denied* 280 Kan. 985 (2005), contending that when "drug paraphernalia is used for its intended purpose, the crime of pos-

session of drug paraphernalia will be merged into the primary offense," *i.e.*, possession of marijuana.

In *Castillo*, a panel of this court held, under the facts of that case, that the crime of possession of marijuana with intent to sell within 1,000 feet of a school merged with the crime of possession of drug paraphernalia, the latter being a plastic bag which contained the marijuana. The critical fact appeared to be that the same marijuana provided the factual basis for both charges: "Castillo possessed one bag of marijuana. Splitting that single offense into two counts was constitutionally impermissible." 34 Kan. App. 2d at 177.

Here, of course, Ralston possessed two bags of marijuana in addition to the marijuana residue in the hitter box and pipe. In any event, our Supreme Court disapproved merger analysis after the *Castillo* opinion was filed. See *State v. Schoonover*, 281 Kan. 453, 493, 133 P.3d 48 (2006). The "same-elements test" is now "the only test to determine multiplicity arising from convictions of separate statutes." *State v. Malm*, 37 Kan. App. 2d 532, Syl. ¶ 12, 154 P.3d 1154, *rev. denied* 284 Kan. 949 (2007).

The following test is used to determine whether convictions are multiplicitous:

"First, a court must consider whether the convictions are based upon the same conduct. If not, the multiplicity analysis ends. If based on the same conduct, the court must then consider whether the convictions are based on a single statute or multiple statutes. If the convictions are based upon different statutes, the convictions are multiplicitous only when the statutes upon which the convictions are based contain an identity of elements." 37 Kan. App. 2d 532, Syl. ¶ 12.

Assuming without deciding that Ralston's convictions are based on the same conduct, the two statutes upon which the convictions are based do not contain an identity of elements. Marijuana is a hallucinogenic controlled substance under K.S.A. 65-4105(d)(16). K.S.A. 65-4162(a) makes it "unlawful for any person to possess" such a substance, and K.S.A. 65-4152(a)(2) states "[n]o person shall use or possess with intent to use . . . any drug paraphernalia to use, store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body" such a substance.

Simply put, possession of marijuana requires possession of marijuana, while possession of drug paraphernalia does not; and possession of drug paraphernalia requires possession of drug paraphernalia, while possession of marijuana does not. See *State v. Patten*, 280 Kan. 385, 391, 122 P.3d 350 (2005) (manufacturing methamphetamine and possession of drug paraphernalia are not multiplicitous under same elements test). Because possession of marijuana and possession of drug paraphernalia require proof of an element not required to prove the other crime, the crimes are not multiplicitous. Ralston's argument is without merit.

Affirmed.