NOT DESIGNATED FOR PUBLICATION

Nos. 112,045
112,046

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

CASSIE JOLENE TYNER,
*Appellee*.

MEMORANDUM OPINION

Appeal from Harvey District Court; JOE DICKINSON, judge. Opinion filed October 2, 2015. Affirmed.

*Kaitlin M. Dixon*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellant.

*Michael X. Llamas*, of Llamas Law, LLC, of Newton, for appellee.

Before GREEN, P.J., HILL, J., and TIMOTHY G. LAHEY, District Judge, assigned.

*Per Curiam*: The State appeals the trial court's dismissal of two drug-related cases. The court found the State had agreed not to file the charges as part of a plea agreement entered into by the parties in two earlier cases involving the same defendant. We find no abuse of discretion by the district court and affirm the court's dismissal of the two cases.

1

THE UNDERLYING FACTS

On March 14, 2013, the State charged Cassie Tyner, in 13CR112, with possession of methamphetamine and marijuana, along with some traffic offenses. The offenses in the complaint were alleged to have occurred on December 28, 2012. Almost a year later, on March 13, 2014, the State charged Tyner, in 14CR172, with possession with intent to distribute methamphetamine and one count of use of a communication facility for drug transactions. These crimes were alleged to have been committed on October 14, 2011.

Tyner filed identical motions in both cases entitled "Defendant's Motion to Enforce Agreement." In the motions, Tyner asserted that the State violated a previous agreement between it and Tyner by filing these two drug-related cases.

At the hearing on defendant's motions, defendant's former attorney, Donald Snapp, was the first witness to testify. He stated that on January 15, 2013, he represented Tyner in a probation violation hearing involving two 2010 criminal cases. Snapp testified that on the date of that hearing, he discussed the case with the prosecutor Jason Lane. Tyner was facing possible prison time if her probation was revoked. Snapp recalled that he and Lane decided that in exchange for Tyner not contesting her probation violations and not contesting disposition, the State would agree not to file some pending charges based on reports that were in the possession of the county attorney's office. He could not recall any specific information about the pending charges such as dates of the alleged offenses or case numbers but believed they were drug crimes.

Snapp stated that he relayed this offer to Tyner and that she knew about the cases that could potentially be brought against her. He testified that in accordance with the agreement, she stipulated to the probation violation and stipulated to a prison disposition and that she received a durational departure on her prison sentence. He stated that he

believed part of the reason she chose not to contest the State's allegations at her probation violation hearing was the agreement on the potential future charges.

Tyner also testified at the hearing. She stated that before her probation revocation hearing in 2013, Snapp told her about some pending charges that could be filed against her. Tyner stated that Snapp also informed her that the State had agreed not to file the new charges if she did not oppose her probation revocation. Tyner believed that had she not agreed to stipulate to her probation violations and to serve her prison sentence in those cases, she would have had her probation reinstated by the court. She stated that the only thing that kept her from contesting the probation revocation was her belief that the pending charges against her would not be filed. Tyner was told the pending cases were drug related but was not informed of the precise charges.

Assistant County Attorney Jason Lane was the last witness to testify. He testified that he did not enter into any agreement with Tyner on behalf of the State. Lane stated that before the probation revocation hearing, he merely asked Snapp what Tyner wished to do at the hearing and Snapp told him that she was not going to contest the allegations. He admitted to informing Snapp of some police reports concerning Tyner but denied any agreement not to file charges.

At the end of the hearing, the district court dismissed 13CR112 and 14CR172 with prejudice. The court found that the filing of the cases violated an "inartfully done" plea agreement in the 2013 probation violation hearing. In making its decision, the district court noted that Tyner understood that the State was not going to file the charges in these two cases, that she relied on the agreement in stipulating to the probation violation, and the court found it would be unfair to allow the State to prosecute the cases.

3

ANALYSIS

A district court's decision to dismiss criminal charges with prejudice is reviewed under an abuse of discretion standard. *State v. Bolen,* 270 Kan. 337, Syl. ¶ 2, 13 P.3d 1270 (2000). An abuse of discretion only occurs if:

> "(1) the judicial action is arbitrary, fanciful, or unreasonable, *i.e.*, no reasonable person would have taken the view adopted by the trial court; (2) the judicial action is based on an error of law, *i.e.*, the discretion is guided by an erroneous legal conclusion; or (3) the judicial action is based on an error of fact, *i.e.*, substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based." *State v. Miles*, 300 Kan. 1065, 1066, 337 P.3d 1291 (2014).

The State argues on appeal that the district court erred by finding that an enforceable agreement existed between it and Tyner. The district court found that an agreement between the parties existed despite conflicting evidence from the parties. Under such circumstances, the existence of a contract was a question of fact. See *State v. Ralston*, 43 Kan. App. 2d 353, 359-60, 225 P.3d 741 (2010), *rev. denied* 291 Kan. 917 (2011). Thus, to determine if the district court abused its discretion, this court must determine if substantial evidence supports the district court's finding.

"Substantial evidence is such evidence that a reasonable person might accept as sufficient to support a conclusion." *State v. May*, 293 Kan. 858, 862, 269 P.3d 1260 (2012). On review for substantial evidence, this court does not reweigh conflicting evidence, pass on the credibility of witnesses, or substitute its evaluation of the evidence for the district court's. Further, it must accept as true all evidence and inferences drawn from the evidence that support or tend to support the district court's findings. *State v. Brown,* 300 Kan. 542, 546, 331 P.3d 781 (2014).

4

"A plea agreement is a contract between the State and the accused, and the exchanged promises must be fulfilled by both parties." *State v. Peterson,* 296 Kan. 563, 567, 293 P.3d 730 (2013). Fundamental contract principles should generally be used to construe plea agreements. *State v. Boley,* 279 Kan. 989, 992, 113 P.3d 248 (2005). One such principle is that a binding contract requires a meeting of the minds as to all essential terms. *Ralston,* 43 Kan. App. 2d at 360. The State argues that no such meeting of the minds existed between it and Tyner, precluding the district court from finding that an enforceable agreement existed that justified dismissal of these cases. "To constitute a meeting of the minds there must be a fair understanding between the parties which normally accompanies mutual consent and the evidence must show with reasonable definiteness that the minds of the parties met upon the same matter and agreed upon the terms of the contract." *Steele v. Harrison,* 220 Kan. 422, Syl. ¶ 3, 552 P.2d 957 (1976).

The State argues that neither Snapp nor Tyner knew what Tyner was bargaining for because they could not name what cases were pending, how many there were, or when they occurred. As such, it asserts there was no meeting of the minds. But Snapp testified that the State agreed not to file any charges based on "reports that were in the possession of the county attorney's office at that time." This could reasonably be interpreted as an agreement not to file *any and all* charges that were contained in police reports that were in the possession of the county attorney's office at the time the plea bargain was entered into. Given this broad but sufficiently definite description of the obligations of the State as part of the plea bargain, a detailed recitation of the precise cases and charges covered under the agreement was unnecessary. A reasonable person could find that the parties came to a fair understanding of the terms of the plea bargain.

The existence of an enforceable plea bargain not to file charges in these two cases is further supported by other evidence. Both Snapp and Tyner understood that the pending charges the State agreed not to file involved drugs. Both cases on appeal involve drug crimes. In addition, the offenses in these cases were alleged to have occurred in

5

October 2011 and December 2012, long before these cases were actually filed in district court. It can be reasonably inferred based on these offense dates that the reports were in the possession of the county attorney's office on January 15, 2013, when the plea agreement was reached. The State presented no evidence suggesting it did not possess police reports in the two cases at the time of the plea agreement in the probation violation hearing.

The district judge was faced with a straightforward factual dispute in this matter. The defendant contended a plea agreement prohibited the filing of the two drug-related cases, and the State denied there was any plea agreement. It is the district court's obligation to weigh the evidence and make credibility determinations based on that evidence. Here, the district court was persuaded that there was a plea agreement which prohibited the State from bringing the two drug-related cases, and substantial evidence supports the determination.

The district court's decision was not erroneous, nor was it arbitrary, fanciful, or unreasonable. The decision of the district court is affirmed.

Affirmed.