NOT DESIGNATED FOR PUBLICATION

No. 116,003

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TOMMIE LITTLIES,
*Appellant*.


MEMORANDUM OPINION

Appeal from Lyon District Court; W. LEE FOWLER, judge. Opinion filed August 18, 2017. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Laura L. Miser*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., STANDRIDGE and SCHROEDER, JJ.


*Per Curiam*:  Tommie Littlies was convicted after a jury found him guilty of distribution of methamphetamine, no drug tax stamp, and illegal use of a communication facility or device. Littlies moved for a new trial, alleging the State suppressed information favorable to his defense in violation of the mandate requiring disclosure of such information set forth in *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Although the district court noted the State should have disclosed the information to the defense prior to trial, the court found failing to disclose it did not constitute a *Brady* violation as alleged by Littlies. As a result, the court denied Littlies'

1

motion for a new trial. For the reasons stated below, we affirm the decision of the district court.

FACTS

Sometime in the summer of 2015, Littlies, his fiancée, and a friend went to Emporia, Kansas, to visit Brandy Works, who was a friend of a friend. While there, the group used methamphetamine, which was provided by Littlies. Littlies sold some of his remaining drugs at the end of the evening.

Littlies testified at trial that Works used methamphetamine with the group and that she purchased a small amount from him that evening because he needed money. Littlies said Works asked at the time whether he would sell more methamphetamine to her. Littlies testified that he did not sell to her again until the incident in question. Works testified, however, that she did not use methamphetamine with Littlies while he was in Emporia during the summer of 2015 because she was sober at that time. Works said she did view Littlies as an "open door" to sell to her after that night though.

On October 24, 2015, Littlies and Works exchanged some text messages that ultimately led to the sale of methamphetamine later that evening. The following text messages were introduced as evidence at trial:

> "[Works:]  hi how r ya? u good?
> "[Littlies:]  What up
> "[Works:]  burnin whole n my pocket :)
> "[Littlies:]  where are u
> "[Works:]  at home
> "[Littlies:]  How big of a hole lol
> "[Works:]  let me see[.]"

2

Littlies testified that when Works asked "'[u] good,'" he thought she was asking whether he had any drugs for sale. Works' testimony was consistent with Littlies' understanding. Works said that "'burning a hole in my pocket'" meant she had money to purchase drugs. She further explained that when Littlies asked "'how big of a hole,'" she thought he was asking Works how much money she had to purchase drugs.

After Works and Littlies began exchanging texts, Works contacted Deputy Heath Samuels of the Lyon County Sheriff Department and Narcotics Task Force, with whom she previously had worked as a confidential informant, and asked if he was interested in setting up a controlled purchase of drugs. Samuels informed her he was interested. Works and Littlies continued to exchange text messages to set up an exchange:

"[Littlies:]  Don't take long or I'm thinking it's setup lol really
"[Works:]   just give me just one min hubby counting money too
"[Works:]   him n I got 300
. . . .
"[Works:]   . . . is there a special going on today or no
"[Littlies:]  Not really girl people have been tight what u need for that
. . . .
"[Works:]   id like one full ticket then if ya could a smidge more if not that's ok and I
            have no lic. I could get ride . . . .
"[Littlies:]  My bad girl ticket meaning 2 Lil girlfriends my bad don't know the term
"[Works:]   game of pool
. . . .
"[Littlies:]  all is well hold them ends no more holes being burned lol
. . . .
"[Works:]   hubby says come on down we take the small box steaks if u can be here by
            9 . . . ."

Works said she told Littlies she had $300 and wanted to purchase an "eight ball" or a little more if he could give her a better deal. She initially used the term "ticket" to

3

indicate eight ball, but Littlies did not appear to understand the term, so she used the term "game of pool" to clarify. An eight ball is slang for 3.5 grams of methamphetamine. She testified that when she later told him that she only wanted the "'small box of steaks,'" she meant she only wanted half an eight ball instead of the whole thing. Works said that when Littlies told her to "'hold them ends, no more holes being burned,'" she understood him to mean that she should not give her cash to anyone else. Littlies and Works ultimately agreed to meet at a Hardee's in Emporia.

Works informed Deputy Samuels that the price would be $180 for 2 grams of methamphetamine. Works described the seller as a heavy set, black male from Topeka named Tommie. Samuels picked up Works prior to the exchange and strip searched her to confirm she had no contraband, drugs, or money on her person. Officer Dominick Vortherms of the Emporia Police Department and Narcotics Task Force equipped Works with a wire so her conversation could be monitored and, after recording the serial numbers of the bills so he could later track the money, gave her $180 of Emporia Police Department Imprest Fund money. Vortherms then drove Works to the designated Hardee's in an undercover police vehicle, dropped her off, and parked in a location across the street where he could observe one side of the building. Deputy Samuels parked at a gas station adjacent to the Hardee's, where he could see the other side of the building.

Littlies arrived at the entrance of the Hardee's and Works got into his van. Works told Littlies that she had $180 for half an eight ball, and Littlies replied that he had "all of it," which Works said she understood to mean an entire eight ball. Works responded that she could tell her husband to bring additional money. She called Deputy Samuels and, pretending he was her husband, asked him to bring more money. Works handed her phone to Littlies, and he and Samuels arranged for Littlies to wait for Samuels to bring more money. Samuels retrieved an additional $120 from the Lyon County Sheriff's Office Imprest Fund and recorded the serial numbers on the bills. He returned to the

4

Hardee's, pretending to be Works' husband. The sale of methamphetamine was completed directly in the presence of Samuels.

After the transaction was complete, Officer Vortherms followed Littlies and Deputy Tyler Pettigrew of the Lyon County Sheriff's Department pulled Littlies over. Pettigrew identified the driver as Littlies. Vortherms searched Littlies and found a large amount of money in his pocket. The money on Littlies matched the serial numbers from the law enforcement money recorded prior to the transaction. Deputy Pettigrew arrested Littlies and transported him to the Lyon County Jail. The substance recovered from the sale field-tested positive for methamphetamine. Works was compensated for her cooperation in the case.

At his February 22-23, 2016, trial, Littlies did not dispute he sold methamphetamine to Works on October 24, 2015. Rather, he defended against the charge by claiming he was entrapped, or lured, into committing a crime he otherwise would not have committed. Littlies testified that Works initiated the drug transaction and, although he did not want to sell methamphetamine to her, he felt obligated to help her. Littlies admitted on cross-examination, however, that he previously had distributed drugs in Emporia. When Works testified, she indicated that she had been sober for 9 months prior to the incident at Hardee's and that she was motivated to initiate contact with Deputy Samuels because she wanted to stay clean and she therefore did not want a "major supplier" like Littlies in her life. The district court gave the jury an instruction on entrapment. The jury found Littlies guilty as charged.

Before sentencing, Littlies filed a motion requesting a new trial. In support of his request, Littlies alleged the State failed to inform the defense that law enforcement had contact with Works a few days before Littlies' jury trial. Three days prior to trial, Works' ex-husband informed Officer Vortherms and Deputy Samuels that he was concerned Works was using methamphetamine and that a man named Rodney Kindle likely was the

5

individual selling drugs to her. The officers observed Kindle's vehicle at Works' house and began investigating Kindle. On February 17 or 18, 2016, Deputy Samuels stopped Kindle's car and arrested him for failing to update his address with the Division of Motor Vehicles. A search of his car uncovered a methamphetamine pipe, which Kindle claimed belonged to Works.

At around 4 p.m. on the day of Kindle's arrest, Deputy Samuels searched Works' house for drugs or paraphernalia in connection with the investigation of Kindle. Samuels recovered a small amount of marijuana rolled in a cigarette, a used methamphetamine pipe with residue, and small empty baggies, which based on Samuels' experience, were the kind usually used to store and sell methamphetamine. Deputy Samuels secured the items as evidence and assigned it a case number associated with Works. Samuels reported that Works admitted to possession of marijuana due to a relapse. The evidence collected from the search of Works' house was not used in the case against Kindle.

Littlies argued that he was entitled to a new trial under the legal principles set forth in *Brady* because the State failed to disclose new evidence that was material to his defense of entrapment. Specifically, Littlies alleged he should have been able to use the new evidence to impeach Works' testimony regarding her alleged sobriety and her motivation for assisting law enforcement.

The district court held that the new evidence did not require a new trial. Although it found the State should have disclosed the evidence to the defense, the court informed the parties that it would have deemed the evidence inadmissible at trial because the information was not relevant to the State's charges against Littlies or to his theory of defense claiming entrapment. More specifically, the court determined Works' credibility was not essential to a conviction in this case because the jury did not have to rely on her testimony; the sale of drugs occurred in the physical presence of Deputy Samuels, who testified at trial, and the negotiations for the sale were recorded and shown to the jury in

6

the form of text messages. The court also noted the jury heard evidence that Works previously had worked with law enforcement to avoid prosecution on other occasions and that she had a drug addiction; so, the new evidence would not have added anything of substance for the jury to consider.

As to Littlies' defense, the district court explained that entrapment focuses on the defendant's state of mind and requires a showing that the defendant would not have otherwise committed the criminal act. In this case, however, Littlies conceded in his testimony at trial that he previously had distributed drugs in Emporia. As a result, the court found Works' testimony was not essential on this issue. The court also rejected Littlies argument that Works' trial testimony was false, noting the transaction upon which the criminal charges were based happened in October; therefore, evidence of a relapse 4 months later was irrelevant except to show she was incapacitated at the time she testified, an issue that was not raised by Littlies.

After denying his motion for a new trial, the district court sentenced Littlies to 68 months' imprisonment and 36 months' postrelease supervision.

ANALYSIS

On appeal, Littlies claims the district court should have granted him a new trial because the State's failure to disclose new evidence violated his due process rights under the legal principles set forth in *Brady*. Specifically, he claims the State suppressed information reflecting that law enforcement discovered evidence of drugs and paraphernalia in Works' house just a few days before Littlies' trial. Littlies further claims suppression of this information constitutes a *Brady* violation because it deprived him of the opportunity to impeach Works about (1) false statements she had made at trial regarding her sobriety and (2) false statements she had made at trial regarding her motive to assist law enforcement. Littlies argues that both the State's case against him and his

7

theory of defense hinged entirely on whether the jury believed Works' testimony. Because the evidence at issue went directly to Works' credibility, Littlies claims he was prejudiced in his ability to defend against the charges and is entitled to a new trial.

A district court's decision regarding whether a *Brady* violation has occurred is reviewed de novo with deference to the court's findings of fact, but the court's denial of the defendant's motion for a new trial is reviewed under an abuse of discretion standard. *State v. Warrior*, 294 Kan. 484, Syl. ¶ 13, 277 P.3d 1111 (2012). A district court abuses its discretion when it applies an incorrect legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011).

Prosecutors have a duty to disclose evidence favorable to the accused when the evidence is material either to guilt or punishment, regardless of the good faith or bad faith of the prosecution. *Brady*, 373 U.S. at 87. There are three elements of a *Brady* violation claim: (1) The evidence at issue must be favorable to the accused, either because it is exculpatory or impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must be material so as to establish prejudice. *Warrior*, 294 Kan. 484, Syl. ¶ 10.

*Impeachment: sobriety*

Had it been disclosed before trial, Littlies argues he could have used the fact that the police discovered evidence of drugs and paraphernalia in Works' house a few days before Littlies' trial as evidence to impeach Works' testimony. Littlies asserts this evidence would have shown Works was lying at trial when she testified that she was sober for the 9 months prior to the controlled sale of drugs. Littlies also asserts this evidence would have permitted his attorney to question the credibility of Officer Vortherms and Deputy Samuels because they were in the courtroom and aware that

Works was providing false testimony about her sobriety in the 9 months prior to the controlled sale.

As noted by Littlies, Works testified at trial that at the time of the controlled drug sale, she had been sober for 9 months. Contrary to Littlies' assertion, however, the fact that drugs and paraphernalia were discovered by law enforcement in Works' house in February 2016 does not contradict the testimony provided by Works that when the controlled sale occurred in October 2015, she had been sober for 9 months. In other words, even if Works had relapsed and was in possession of drugs and paraphernalia at the time of Littlies' trial in February 2016, that evidence would not contradict her testimony that she had been sober for 9 months as of October 2015, when the drug transaction took place. Because the newly discovered evidence could not have impeached Works' testimony about her sobriety at trial, it fails to meet the first element of a *Brady* violation claim. See *Brady*, 373 U.S. at 87 (first element of *Brady* violation claim is that evidence at issue must be favorable to accused, either because it is exculpatory or impeaching).

*Impeachment: motivation to help the police*

Littlies also argues that if he would have had access to the newly discovered information he could have shown Works falsely testified at trial that she was motivated to assist law enforcement as a confidential informant because she wanted to eliminate temptations that could be a threat to her continued sobriety. Specifically, Littlies claims the information suppressed—that law enforcement found drugs and paraphernalia in Works' house shortly before she testified on the State's behalf in Littlies' trial—supports a finding that Works was motivated to continue helping law enforcement as a means to avoid prosecution for continued drug use, not as a means to stay sober.

9

At the hearing on Littlies' motion for a new trial, Deputy Samuels testified regarding potential charges against Works as follows:

"Q:    Okay. Did you indicate to her that she would be charged?

"A:    I did not indicate to her whether she would or would not be charged.

"Q:    Did you ask her to cooperate or continue to cooperate?

"A:    I don't recall asking her, but I think that's a—it's an understanding. I may have told her to keep the information coming. She's been a great informant in the past.

"Q:    Okay. But you indicated to her that she would not necessarily be charged in this case or with the evidence that you secured if she were to continue to cooperate?

"A:    I don't make anybody any promises. I've got, I think, five years to file charges with the—or file an affidavit, but I think she probably understood that if she continued giving me information that there was a possibility of that."

The State argues neither this testimony nor any other evidence in the record suggests that any benefit was given to Works for testifying; therefore, the fact that law enforcement found drugs and paraphernalia in Works' house shortly before she testified on the State's behalf is not proper impeachment evidence of Works' credibility. But Deputy Samuels' testimony reflects he and Works had an "understanding" that if she continued to provide information to law enforcement, she could avoid charges related to her own illegal drug activity. "Bias, interest, or improper motives of a witness may always be shown in order to place a witness' testimony in proper perspective. A cross-examiner should have wide latitude in establishing partiality, bias, motive, or interest." *State v. Scott*, 39 Kan. App. 2d 49, Syl. ¶ 4, 177 P.3d 972 (2008). An understanding between Works and law enforcement at the time of trial that Works could avoid charges by acting as an informant is information relevant to Works' bias, interest, and motive for testifying on behalf of the State. See *State v. Davis*, 237 Kan. 155, 158, 697 P.2d 1321 (1985) ("[I]nquiry into whether the witness was offered any 'arrangement or deal' by the State in exchange for his [or her] testimony is crucial."). The evidence should have been disclosed for this purpose.

But the fact that the State suppressed evidence that Works may have bias, interest, and motive for testifying on behalf of the State is not enough to establish a *Brady* violation. Littlies also must establish that the evidence was material to the case and its suppression caused Littlies to suffer prejudice. See *Brady*, 373 U.S. at 87 (third element of *Brady* violation claim is that evidence suppressed must be material so as to establish prejudice). Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Warrior*, 294 Kan. 484, Syl. ¶ 11.

Littlies argues that the new evidence is material to his entrapment defense because it supports a finding that Works was motivated to help the police in order to avoid prosecution, instead of to help her stay sober as she testified at trial. Littlies claims the evidence could have successfully impeached Works on this issue, which in turn could have made the jury less likely to believe Works' testimony on other issues. In support of his argument, Littlies cites *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972), a case in which new evidence discovered by the defendant after trial indicated that the government failed to disclose a promise made to its key witness that he would not be prosecuted if he testified for the government. The witness testified at trial that no such arrangement had been made. The United States Supreme Court ultimately held that credibility evidence may be a material issue when the prosecution's case rests almost entirely on the testimony of a key witness. 405 U.S. at 154-55. Littlies argues that, just like in *Giglio*, the credibility evidence was material in this case because his theory of defense—entrapment—rested entirely on whether the jury believed the testimony provided by Works, a key witness. Specifically, Littlies claims the success of his entrapment defense turned on whether the jury believed Works when she testified that he initiated the sale or whether the jury believed Littlies when he testified that Works initiated the sale.

11

But here, unlike in *Giglio*, the prosecution's case did not rely solely, or even in large part, on Works' testimony to prove its case against Littlies. As the district court noted, Deputy Samuels was physically present for the sale and he testified as a key witness at trial. In proving its case to the jury, the State also relied heavily on the text messages exchanged between Works and Littlies.

More importantly, however, is the fact that entrapment is not a viable defense given the facts presented in this case, regardless of who the jury believed initiated the sale at issue here. The defense of entrapment applies when a law enforcement officer or an officer's agent generates the original intent to commit a crime in the mind of a person who is innocent of any criminal purpose and who had not contemplated or would not have committed a crime but for the inducement of law enforcement. See K.S.A. 2016 Supp. 21-5208; *State v. Van Winkle*, 254 Kan. 214, 215, 864 P.2d 729 (1993). The defense does not apply where the evidence establishes the defendant had a previous intention or predisposition to commit the crime and the officer merely afforded an opportunity to complete it. *State v. Jones*, 271 Kan. 201, 204, 21 P.3d 569 (2001); *Van Winkle*, 254 Kan. at 215-16; *State v. Williamson*, 210 Kan. 501, 506, 502 P.2d 777 (1972). In the analysis of entrapment cases, the extent of law enforcement's solicitation is weighed against the defendant's willingness to comply and other evidence of predisposition to determine whether the defendant originated the criminal purpose or was entrapped. *State v. Ralston*, 43 Kan. App. 2d 353, 367, 225 P.3d 741 (2010).

Littlies argues that the success of his entrapment defense turned on whether the jury believed Works when she testified that he initiated the sale or whether the jury believed him when he testified that Works "enticed" him to make the sale. But the crux of an entrapment defense is the intent and predisposition of the defendant. *State v. Bagemehl*, 213 Kan. 210, 213, 515 P.2d 1104 (1973). As the district court pointed out, Littlies provided evidence of his predisposition to commit the crime by admitting at trial that he previously had distributed methamphetamine while he was at Works' house in

Emporia. Further, the text messages are evidence of a straightforward drug transaction: Littlies asked Works how much money she had, what product she wanted, and negotiated the means of completing the exchange. "[R]eady compliance by the defendant is generally, if not universally, accepted as evidence of predisposition." *State v. Fitzgibbon*, 211 Kan. 553, 555, 507 P.2d 313 (1973).

For the reasons stated above, we conclude the State's failure to disclose the evidence at issue does not constitute a *Brady* violation as alleged by Littlies. As a result, we affirm the district court's decision to deny Littlies' motion for a new trial.

Affirmed.