NOT DESIGNATED FOR PUBLICATION

No. 117,481

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL A. HALL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; JEFFRY J. LARSON, judge. Opinion filed July 27, 2018.
Affirmed.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Laura L. Miser*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before GREEN, P.J., MCANANY and BRUNS, JJ.

PER CURIAM: Michael A. Hall was charged with five drug-related counts based on
drug sales to a confidential police informant. A jury convicted him of four counts:
distribution of less than 1 gram of methamphetamine within 1,000 feet of school
property; distribution of more than 1 but less than 3.5 grams of methamphetamine; and
two counts of illegal use of a communication facility. On appeal, Hall raises two issues
for our consideration: (1) that the trial court erred by failing to instruct the jury on
entrapment and (2) that the trial court erred by denying his motion for acquittal and arrest

1

of judgment on the illegal use of a communication facility charge. Finding no merit in Hall's contentions, we affirm.

In April 2016, Crystal Beck agreed to work with law enforcement as a confidential informant after facing her own potential distribution charge. Beck worked with Emporia and Lyon County law enforcement. Although she was not being paid when the transactions with Hall occurred, she eventually became a paid informant. She estimated she made 15 to 20 controlled purchases as an informant. Beck typically arranged her own controlled buys as long as she gave law enforcement a one-hour notice. Beck contacted Hall, whom she knew through her cousin, to purchase methamphetamine on May 12 and 23, 2016.

On May 12, 2016, Beck told law enforcement officers that she had arranged to buy 1.75 grams of methamphetamine from Hall for $150. Beck used her cell phone to arrange this purchase, and a photograph of her telephone call log showed three outgoing calls to Hall that day. Before completing the purchase, she met with two law enforcement officers, Emporia Police Officer Dominick Vortherms and Lyon County Sheriff's Deputy Heath Samuels, at the Emporia State University Police Department. Before the buy, they searched Beck and her vehicle and gave her $150 in recorded U.S. currency and an audio recording device. Vortherms and Samuels followed Beck to Hall's home, watched her park her car, walk into Hall's garage, and return to her vehicle after nine minutes. They then followed her as she drove back to the police department. She turned over a bag of what the KBI later confirmed was methamphetamine. She also returned the audio recorder, from which a recording of the transaction was made.

On May 23, 2016, Beck told law enforcement officers that she had again arranged to buy methamphetamine from Hall. This transaction was originally supposed to take place at Hall's home but was moved to Beck's mother's home, which was located within 300 feet of an elementary school.

2

Before conducting the sale, the police again searched Beck and provided her with recorded funds and a recording device. They followed her to the agreed-upon location, where she entered and remained in the house for about 20 minutes. Beck later testified that once she and Hall agreed upon a price, she placed the money on the couch near Hall, who then handed it to another individual, Cori Arb. Arb then handed Hall a baggy of methamphetamine, and Hall passed that to Beck. Beck returned the audio recording device to the police, although it did not provide useful audio.

After these two purchases, Vortherms arrested Hall and seized a cell phone Hall had given his wife before his arrest. When Vortherms called the number provided by and used by Beck to make buys, the seized cell phone rang. Detective Kevin Shireman later testified that he examined the cell phone seized from Hall after his arrest and found no texts or phone calls corresponding to either May 12 or 23, 2016. He explained that they could have been deleted by the user or automatically according to the cell phone settings.

The State charged Hall with one count of distribution of over 1 gram but less than 3.5 grams of methamphetamine within 1,000 feet of school property, a drug grid severity level two nonperson felony, and one count of illegal use of a communication facility, a severity level eight nonperson felony. The State amended its complaint three times before trial.

A two-day jury trial was held on the following five counts:  (1) distribution of less than 1 gram of methamphetamine within 1,000 feet of school property, a drug grid severity level three nonperson felony alleged to have occurred on May 23, 2016; (2) distribution of more than 1 but less than 3.5 grams of methamphetamine, a drug grid severity level three nonperson felony alleged to have occurred on May 12, 2016; (3) and (4) two counts of illegal use of a communication facility, a severity level eight nonperson

3

felony; and (5) no drug tax stamp, a severity level 10 nonperson felony, alleged to have occurred as part of the May 12, 2016 distribution.

After the State rested, the court dismissed count five, the drug tax stamp charge, upon the State's motion. Hall then moved for acquittal, asserting that the State had not met its burden of proof on the remaining counts. Hall declined to put on evidence. After being instructed and listening to closing arguments, the jury convicted Hall of the four remaining counts.

Before sentencing, Hall moved for acquittal and arrest of judgment on counts two and four, the charges alleging illegal use of a communication facility, arguing that the State had failed to establish proper venue under *State v. Castleberry*, 301 Kan. 170, 339 P.3d 795 (2014). At sentencing, the State conceded count four, the charge of illegal use of a communication device relating to the May 12 transaction, as the prosecutor could not remember whether she had asked Beck if she was in Lyon County when she arranged the May 12 transaction. Nevertheless, the State argued that the text messages sent and received during the May 23 transaction in count two occurred after she was with the law enforcement officers, proving she was in Lyon County. The trial court granted Hall's motion as to count four. It denied the motion as to count two, finding that there was sufficient circumstantial evidence to establish that some of the messaging between the two occurred in Lyon County.

After determining Hall had a criminal history score of G, the court sentenced him to concurrent sentences of 54 months' incarceration and 36 months' postrelease for count one, distribution of less than 1 gram within 1,000 feet of a school; eight months for illegal use of a communication device in count two; and 49 months for count three, distribution of over 1 gram but less than 3.5 grams of methamphetamine.

4

*Was It Clearly Erroneous for the Trial Court to Fail to Instruct the Jury on a Defense of Entrapment?*

Hall argues he was entitled to an instruction on entrapment at trial because the State solicited his criminal conduct.

When analyzing jury instruction issues, appellate courts must make three determinations: (1) whether the issue is reviewable, (2) whether any error occurred, and (3) whether any error requires reversal. *State v. Barber*, 302 Kan. 367, 376, 353 P.3d 1108 (2015).

Hall's counsel requested no entrapment instruction at trial. Because Hall brings this issue for the first time on appeal, our review is limited to determining whether the trial court's decision was clearly erroneous. K.S.A. 2017 Supp. 22-3414(3); see *State v. Williams*, 295 Kan. 506, 514-15, 286 P.3d 195 (2012). In evaluating whether the failure to give an instruction amounts to clear error, we exercise unlimited review of the record as a whole. *State v. Betancourt*, 299 Kan. 131, 135, 322 P.3d 353 (2014). The defendant bears the burden to establish clear error. 299 Kan. at 135. Defendant must "'firmly convince the appellate court that the giving of the instruction would have made a difference in the verdict.' [Citation omitted.]" *State v. Cooper*, 303 Kan. 764, 770, 366 P.3d 232 (2016).

This court, then, must consider whether the omission of an otherwise legally and factually appropriate instruction prompted a "clearly erroneous" verdict. *State v. Brown*, 300 Kan. 542, 554-55, 331 P.3d 781 (2014). To reverse, this court must be firmly convinced the jury would have reached a different verdict had the instructions been free of error. *Williams*, 295 Kan. 506, Syl. ¶ 5. To determine whether any error occurred, this court must consider whether the instruction would have been legally and factually appropriate, employing an unlimited review of the entire record. 295 Kan. 506, Syl. ¶ 4.

5

In Hall's case, an entrapment defense would not have been legally appropriate. As the State argues, Hall is not entitled to an instruction on an entrapment defense because he did not admit to his involvement in the drug transactions.

In Kansas, the defense of entrapment is codified in K.S.A. 2017 Supp. 21-5208, which states:

"A person is not guilty of a crime if such person's criminal conduct was induced or solicited by a public officer or such officer's agent for the purposes of obtaining evidence to prosecute such person, unless:

"(a) The public officer or such officer's agent merely afforded an opportunity or facility for committing the crime in furtherance of a criminal purpose originated by such person or a co-conspirator; or

"(b) The crime was of a type which is likely to occur and recur in the course of such person's business, and the public officer or such officer's agent in doing the inducing or soliciting did not mislead such person into believing such person's conduct to be lawful."

A defense of entrapment is unavailable to a defendant who does not admit to committing the offense charged. *State v. Einhorn*, 213 Kan. 271, 272, 515 P.2d 1036 (1973); see *State v. Hunter*, 241 Kan. 629, 643, 740 P.2d 559 (1987). Because of this principle, entrapment is an exception to the general rule that a defendant may present legally or factually inconsistent defenses. 241 Kan. at 643. As our Kansas Supreme Court has explained, the availability of an entrapment defense may hinge on how much the defendant acknowledges involvement in the crime:

"A defendant who admits the acts charged by the state, but claims the acts fail to support a criminal charge, may raise entrapment as an additional defense. In situations where the defendant admits some involvement, but fails to admit all the facts alleged by the state, he may or may not be entitled to claim entrapment, depending on the degree of

6

involvement he admits. Admission of substantial involvement would tend to permit the defense, while slight and limited admission would tend to deny the defense." *Einhorn*, 213 Kan. at 273.

Our Kansas Supreme Court has distinguished times in which asserting an entrapment defense may not be precluded by denial of some involvement in the charges, but it still held that an entrapment defense is not appropriate when a defendant denies substantial involvement in the crime:

> "A not guilty plea is not, per se, inconsistent with the defense of entrapment when a defendant may consistently admit substantial involvement in the acts constituting the crime. We have recognized in a number of cases that, depending upon the facts of the case, the denial by a defendant of an act or element of the crime charged did not preclude the assertion of an entrapment defense where substantial involvement was admitted. *State v. Einhorn*, 213 Kan. 271; *State v. Farmer*, 212 Kan. 163; *State v. Fitzgibbon*, 211 Kan. 553. The State's argument that a plea of not guilty and the defense of entrapment are mutually exclusive would hold true in a case where the nature of any other defense asserted is such as to deny substantial involvement. A criminal defendant must pick his position and consistently maintain it throughout his defenses—either he was substantially involved in the acts, or he was not. Only in the latter case are his defenses inconsistent with entrapment." *State v. Rogers*, 234 Kan. 629, 635, 675 P.2d 71 (1984).

The key to the defense of entrapment is admission of substantial involvement in the charged crimes. *Rogers*, 234 Kan. at 634-35. Hall did not admit to the acts charged by the State. Instead, Hall's defense counsel sought to show that the State did not prove Hall was involved in the two transactions with Beck, and the defense did not put on evidence. Without admitting he committed the offenses, or was substantially involved, an entrapment defense would not have been available to Hall and, thus, was not legally appropriate.

Hall contends that he never overtly denied his involvement in the transactions and, thus, should not be precluded from asserting an entrapment defense. Yet, Hall's theory of defense throughout the trial reveals otherwise. In closing argument, defense counsel contended that the State could not prove Hall took part in the transaction, arguing that the officers did not witness the transaction and that Beck was unreliable. Similarly, during cross-examination, defense counsel's questions surrounded those ideas, and defense counsel did not ask questions that alleged entrapment or any facts that would suggest Hall was coerced into the transaction. Defense counsel never spoke of any involvement, much less substantial involvement, in the charged crimes. Entrapment was not Hall's theory of defense, and a corresponding jury instruction therefore would have been legally inappropriate.

Moreover, an instruction on a defense of entrapment also would not be factually appropriate. To determine whether the jury instruction was factually appropriate, this court determines if there was sufficient evidence, viewed in the light most favorable to the requesting party, to support the instruction. *State v. Plummer*, 295 Kan. 156, 163, 283 P.3d 202 (2012). A defendant typically is entitled to an instruction on a theory of defense if there is sufficient evidence for a jury to reasonably find for the defendant on that defense. *State v. Hilt*, 299 Kan. 176, 184, 322 P.3d 367 (2014). This means that the evidence has enough substance that a jury could entertain a reasonable doubt of the defendant's guilt. See K.S.A. 2017 Supp. 21-5108(c); *State v. Chavez*, No. 108,955, 2014 WL 1795760, at *2 (Kan. App. 2014) (unpublished opinion) ("[A] criminal defendant need only create reasonable doubt with his or her evidence of an affirmative defense, such as self-defense or entrapment, to be acquitted."), *rev. denied* 301 Kan. 1048 (2015).

A defendant may claim entrapment when his or her "criminal conduct was induced or solicited by a public officer or such officer's agent for the purposes of obtaining evidence to prosecute such person." K.S.A. 2017 Supp. 21-5208. A confidential

8

informant acting on behalf of law enforcement is an agent of a public official under Kansas' entrapment statute. See *Einhorn*, 213 Kan. at 273-74.

There are, though, limitations on the use of an entrapment defense. The defense of entrapment does not apply when the State actor merely affords an opportunity to commit the crime to someone already inclined to criminality. *United States v. Russell*, 411 U.S. 423, 435, 93 S. Ct. 1637, 36 L. Ed. 2d 366 (1973); K.S.A. 2017 Supp. 21-5208(a). In other words, an entrapment defense is unavailable when the evidence establishes that the defendant had a previous intention or predisposition to commit the crime and the State actor provided the opportunity to complete it. *State v. Jones*, 271 Kan. 201, 204, 21 P.3d 569 (2001). Law enforcement may solicit the defendant's participation, but it is only when the government "actually implants the criminal design into the mind of the defendant" that the defendant can successfully claim entrapment. *Russell*, 411 U.S. at 436.

When analyzing whether law enforcement's solicitation amounts to entrapment, this court weighs the extent of law enforcement solicitation against the defendant's willingness to comply and other evidence of predisposition to determine whether the defendant originated the criminal purpose or was entrapped. *State v. Ralston*, 43 Kan. App. 2d 353, 367, 225 P.3d 741 (2010). A previous conviction for a crime comparable to the charged crime is a recognized way of proving predisposition and, thus, rebutting any claimed entrapment. See *State v. Amodei*, 222 Kan. 140, 142-43, 563 P.2d 440 (1977); *State v. Bratton*, No. 99,521, 2009 WL 4639504, at *6 (Kan. App. 2009) (unpublished opinion). Additionally, evidence of criminal activity or previous suspicious conduct is only "one of the accepted methods of establishing predisposition." *State v. Reichenberger*, 209 Kan. 210, 218, 495 P.2d 919 (1972). Ready compliance by the defendant also may be evidence of predisposition. *State v. Fitzgibbon*, 211 Kan. 553, 554-55, 507 P.2d 313 (1973).

9

Here, a jury instruction on entrapment is factually unsupported. Trial evidence, even viewed in a light most favorable to Hall, showed little to no indication that Beck or any other State actor induced Hall to participate in the drug deal despite reluctance or resistance on his part. Although Hall's conduct was solicited by Beck, who was working as an agent of the State, the evidence presented at trial shows that Hall had a previous intention or predisposition to take part in these crimes. Hall participated in two separate controlled purchases about two weeks apart. Although Beck reached out to Hall for both purchases, she likely did so because she knew of his ability to provide and willingness to participate. There is no evidence suggesting Hall was entrapped. Weighing the State's solicitation against Hall's willingness to comply shows that Hall cannot claim entrapment. The evidence shows that Hall was willing to comply with little solicitation from Beck—in both cases, just a phone call or text messages. He agreed to participate not just once, but twice. The evidence shows that Hall was a willing participant.

Hall claims that the only criminal conduct proven at trial was solicited by the State. He tries to show entrapment by stating that he was likely "not an independent dealer of drugs, but more likely doing a favor for a family member." He also claims that he made no money on the second sale, as Beck testified that he passed the money to Arb. But neither of those assertions diminish the fact that he participated in a transaction for the sale of drugs.

There is little to no evidence showing that a reasonable jury could have found Hall was entrapped by law enforcement, and so an instruction on the defense of entrapment was factually unsupported. Because an instruction on an entrapment defense was legally inappropriate and factually unsupported, it was not error not to provide the jury with an instruction. As a result, Hall's argument fails.

*Did the Trial Court Err by Denying Hall's Motion for Acquittal and Arrest of Judgment on Count Two: Illegal Use of a Communication Facility?*

The trial court denied Hall's motion as to count two, finding sufficient evidence supported the charge of illegal use of a communication facility. In reviewing a trial court's decision to deny a defendant's motion for a judgment of acquittal, this court considers the evidence in the light most favorable to the State and determines if a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. In doing so, this court does not reweigh the evidence, assess the credibility of witnesses, or resolve conflicting evidence. *State v. Llamas*, 298 Kan. 246, 254, 311 P.3d 399 (2013).

Hall was charged with unlawful manufacture, distribution, cultivation, or possession of controlled substances using a communication facility as defined in K.S.A. 2017 Supp. 21-5707:

"(a) It shall be unlawful for any person to knowingly or intentionally use any communication facility:

"(1) In committing, causing, or facilitating the commission of any felony under K.S.A. 2017 Supp. 21-5703, 21-5705 or 21-5706, and amendments thereto; or

"(2) in any attempt to commit, any conspiracy to commit, or any criminal solicitation of any felony under K.S.A. 2017 Supp. 21-5703, 21-5705 or 21-5706, and amendments thereto. Each separate use of a communication facility may be charged as a separate offense under this subsection.

"(b) Violation of subsection (a) is a nondrug severity level 8, nonperson felony.

"(c) As used in this section, 'communication facility' means any and all public and private instrumentalities used or useful in the transmission of writing, signs, signals, pictures or sounds of all kinds and includes telephone, wire, radio, computer, computer networks, beepers, pagers and all other means of communication."

The statute requires more than physical possession of a communication device. Instead, it requires that the communication system be used to facilitate a drug deal.

*Castleberry*, 301 Kan. at 177-78. Additionally, there are location and venue requirements in cases of illegal use of a communication facility:

> "[V]enue to prosecute an alleged drug dealer for the crime of unlawful use of a communication facility is proper in the county where a potential drug purchaser initiates a telephone call to the dealer when the dealer knows the location of the caller and intentionally uses that telephone communication to facilitate the sale of drugs." *Castleberry*, 301 Kan. at 179.

In its denial of Hall's motion, the trial court ruled that sufficient evidence supported the fact that the messaging took place in Lyon County. On appeal though, Hall claims that the State did not prove that Hall knew Beck was in Lyon County when they exchanged messages. To charge Hall successfully on this count, the State had to show that Hall knew Beck was in Lyon County and continued to use the cell phone to facilitate the drug deal. Hall contends that the State did not prove that Hall knew Beck was in Lyon County when the messages occurred and, thus, that the trial court erred by denying his motion. This argument is not persuasive.

The evidence presented shows that Hall knew Beck was in Lyon County when they exchanged messages. Although the State did not put on direct evidence showing that Hall asked Beck if she was in Lyon County, the evidence as a whole shows that he did know. The initial meeting location was in Lyon County, as was the actual meeting location once they changed it—showing Hall knew Beck was in Lyon County. Beck was at the house from 10:07 p.m. to 10:27 p.m. to complete the sale, and Hall and Beck exchanged phone messages at 9:55 p.m., 9:56 p.m., 9:58 p.m., 10:00 p.m., and 10:06 p.m. If Hall knew that they were going to meet soon after messaging, Hall knew Beck was in Lyon County.

The trial court heard the evidence at trial and found that taken in the light most favorable to the State, the evidence would allow a rational fact-finder to believe that Hall

illegally used a communication facility as described in K.S.A. 2017 Supp. 21-5707 and to believe that he knew Beck was also located in Lyon County when they exchanged messages.

Affirmed.